831 So.2d 585 (2002)
Leonard Jasper YOUNG, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2001-KA-01763-COA.
Court of Appeals of Mississippi.
November 26, 2002.
*586 Robert S. Mink, Oxford, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before KING, P.J., BRIDGES and LEE, JJ.
BRIDGES, J., for the court.
¶ 1. The grand jury of Lafayette County indicted Leonard Jasper Young on one count of kidnaping as an habitual offender. At trial, the jury found Young guilty but was unable to fix the penalty. At the sentencing phase of the trial, the court found that Young was in fact an habitual offender and sentenced him to life. Young moved to replace his trial counsel for appeal, *587 and as a result was granted an out-of-time appeal by the court.
On appeal, Young alleges that the jury pool was tainted when he appeared before them during voir dire in leg irons. Young also argues that the court erred in admitting statements concerning his prior bad acts, and that the court permitted the State's witnesses to confer during trial.

STATEMENT OF THE ISSUES
I. DID THE COURT ERR IN ADMITTING TESTIMONY OF YOUNG'S PRIOR BAD ACTS?
II. DID THE COURT ERR IN REFUSING YOUNG'S REQUESTED INSTRUCTION ON CONSENT?
III. DID THE COURT ERR IN REFUSING TO QUASH THE JURY VENIRE BECAUSE A PROSPECTIVE JUROR COMMENTED ON YOUNG'S APPEARING IN LEG IRONS?
IV. DID THE COURT ERR BY ALLOWING THE STATE'S WITNESSES TO CONFER DURING TRIAL?
V. DID YOUNG SUFFER INEFFECTIVE ASSISTANCE OF COUNSEL?

FACTS
¶ 2. Leonard Jasper Young attempted to kidnap Linda Nault on November 15, 1999, from her home in southern Lafayette County. While he threatened Nault with either a shotgun, a pipe, or an axe handle (or a combination thereof), Nault's husband Jimmy and his friend, Darren Smith, attempted to stop Young from absconding with Linda Nault. Jimmy Nault offered to go with Young in his wife's place, and Young agreed. Young and Nault then got into Nault's car and Young had Nault drive him into rural Lafayette County, where Young attempted to sell Nault some illegal prescription drugs. Young then exited Nault's car and walked away.

ANALYSIS

I. DID THE COURT ERR IN ADMITTING TESTIMONY OF YOUNG'S PRIOR BAD ACTS?
¶ 3. Young argues that the court improperly admitted testimony of his prior bad acts. "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." M.R.E. 404(b). However, evidence of prior bad acts may be admitted to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. Young alleges that the court below erred by not declaring a mistrial when Linda Naught stated she was afraid of Young "[b]ecause I knew what he had already done as far as blowing up her trailer and messing up the house."
¶ 4. Young immediately objected, and the court instructed the jury to disregard the statement and cautioned Nault to not mention any prior bad acts of Young she might be aware of. The court has full discretion to declare a mistrial if the inadmissible evidence causes irreparable harm; however, if the inadmissible evidence is less than irreparably harmful, the court may cure the harm by issuing appropriate instructions. Hoops v. State, 681 So.2d 521, 528 (Miss.1996). In Hoops, a witness testified to unrelated prior aggravated assaults committed by Hoops, and the Mississippi Supreme Court held that the trial court properly denied a motion for mistrial and issued an instruction to disregard the prejudicial testimony. Id.
¶ 5. Darren Smith, during his testimony, stated, "I knew everything else that he had done before all that." Young again *588 objected, and the court proceeded to address Young's existing motion in limine that the court had taken under advisement. The court then instructed all witnesses to not comment on Young's prior bad acts. Following this instruction, Jimmy Nault testified that he knew of Young's criminal past in very vague terms, stating, "Yes, some of the things he's done." Nault also stated that he first met Young while they were both in Parchman.
¶ 6. This Court is sympathetic to the difficulties that Young faced in preventing potentially prejudicial evidence to arise in court. However, the nature of the crime committed makes the knowledge of the victims and their state of mind highly relevant and probative, as the court noted. Additionally, the comments of the kidnaping victims stating that they knew of Young's prior bad acts are so vague that they do not appear to constitute evidence of prior bad acts. Finally, a jury is presumed to follow the instructions of the court absent any contrary evidence. Ragin v. State, 724 So.2d 901, 904(¶ 13) (Miss. 1998).
¶ 7. Since the judgment of the court below on what evidence would be permitted regarding Young's prior bad acts is not clearly erroneous, we affirm.

II. DID THE COURT ERR IN REFUSING YOUNG'S REQUESTED INSTRUCTION ON CONSENT?
¶ 8. Although the defendant is entitled to instructions presenting his theory of the case, the trial court may properly deny an asked for instruction when there is not a sufficient factual basis for the desired instruction. Heidel v. State, 587 So.2d 835, 842 (Miss.1991). The court found that there was not a sufficient factual basis for an instruction that Jimmy Nault had consented to drive Young wherever he wanted to go, and thus consented to the kidnaping. Young argues that when Nault substituted himself for his wife as the victim of the kidnaping, he consented to go with Young.
¶ 9. However, the only evidence available to the court that could support an instruction on consent came from the Naults and Darren Smith, who all testified that Young had threatened them with a shotgun. Nault himself testified to his fear of Young, and that Young kept the shotgun pointed at him during their drive. This belies the necessary collegiality of a consensual drive into the country with a friend, which is the case that Young wished to present. However, since the only evidence presented belies Young's defense, we find that the court appropriately held that there was an insufficient factual basis for the sought instruction on consent and affirm.

III. DID THE COURT ERR IN REFUSING TO QUASH THE JURY VENIRE BECAUSE A PROSPECTIVE JUROR COMMENTED ON YOUNG'S APPEARING IN LEG IRONS?
¶ 10. Young argues that his appearance in court wearing leg irons irreparably prejudiced the jury against him. Young was held in leg irons because of his violent criminal history, which included a count of felony escape in Tennessee. Young does not deny that there was some risk of flight, or that he should not have been restrained. Young does argue that the comment of a prospective juror during voir dire, who pointed out that Young appearing in chains in court "creates a preconceived notion of his guilt in this crime or some other crime." Young immediately objected and moved to strike the entire panel. The court denied this motion, and instead issued a cautionary instruction to the final jury panel following their swearing in.
*589 ¶ 11. While a comment by a single prospective juror during voir dire may taint the entire panel, where there is no evidence of such a taint, the court may correctly refuse to disqualify the entire panel from service if the jury affirms that it can render a verdict based solely on the evidence brought before the court. Holland v. State, 705 So.2d 307, 339-40 (¶¶ 119-23) (Miss.1997). In Mississippi, the jury is presumed to have followed the instructions of the court. Ragin, 724 So.2d at 904 (¶ 13). Young has not been able to provide any evidence of prejudice or that the jury failed to apprehend the cautionary instruction offered by the court; thus we find this issue meritless.

IV. DID THE COURT ERR BY ALLOWING THE STATE'S WITNESSES TO CONFER DURING TRIAL?
¶ 12. Young presents this issue in his supplemental affidavit and appeal brief. He alleges that he saw the State's witnesses conferring in open court during trial. It boggles the mind that Young witnessed this, and did not bring it to the court's attention at the time. It also beggars credulity that not only did Young's counsel not notice this, but that the court permitted it, and the State encouraged it, as Young alleges. These facts are not present in the record at all.
¶ 13. Young also charges that witnesses who testified were permitted to retire to the witness holding area following the conclusion of their testimony, and that this demonstrates further collusion against him. Again, the record does not show this to be the case; but even if it were, mere proximity of witnesses to each other is not a violation of the rule. As Young can demonstrate no actual violation of the rule, we find this assignment of error meritless.

V. DID YOUNG SUFFER FROM INEFFECTIVE ASSISTANCE OF COUNSEL?
¶ 14. Young argues that he received ineffective assistance of counsel on several grounds. In order to prove ineffective assistance of counsel, Young must establish by a preponderance of the evidence that 1) counsel's performance was defective, and 2) that defect was so prejudicial as to prevent Young from having a fair trial. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Moody v. State, 644 So.2d 451, 456 (Miss.1994). Young faces a strong yet rebuttable presumption that counsel performed adequately, and he must show a reasonable probability that barring counsel's errors, the result of the trial would have been different. Moody, 644 So.2d at 456. This Court looks at the totality of the circumstances, with deference towards counsel's actions, to find a factual basis for the claim. Id. Should we find that Young's counsel was ineffective, the appropriate remedy is remand for a new trail. Id.
¶ 15. Young argues that his representation was deficient in four ways: first, his counsel did not move for a change of venue; second, counsel did not present evidence of Young's mental illness in defense; third, Young did not testify; fourth, counsel did not put on any witnesses in Young's defense. We shall treat each claim separately.
¶ 16. Young argues that his attorney, Thomas Levidiotis, should have moved for a change of venue. Given that Young presents no new evidence of pre-trial publicity, none more recent than a year prior to trial, this court cannot find any defect in Levidiotis's representation of Young.
¶ 17. Young argues that Levidiotis should have presented evidence of Young's mental illness. Absent any evidence of Young's mental illness, we must *590 conclude that Levidiotis's representation of Young in this regard was not defective.
¶ 18. Young argues that Levidiotis prevented him from testifying. The record demonstrates that this argument is a groundless canard; prior to the defense beginning its case, the court addressed Young and advised him that no one could prevent Young from testifying or force him to testify. Young declined to testify when the court informed him that it was certainly possible that upon cross-examination, Young's prior criminal record might come before the court.
¶ 19. Young also alleges defective performance by Levidiotis in not presenting witnesses in his defense. However, Young names no witnesses, and provides no information about what those putative witnesses would testify to. Accordingly, we must adjudge this allegation meritless.
¶ 20. For the foregoing reasons, we affirm.
¶ 21. THE JUDGMENT OF THE LAFAYETTE COUNTY CIRCUIT COURT OF CONVICTION OF KIDNAPING AS A HABITUAL OFFENDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAFAYETTE COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.