872 So.2d 773 (2004)
Sharon CLARK, Gracie Hulsey, James W. Rogers, Lynda Eaton, and Sherman Rogers, Individually, and as the Administratrix of the Estate of Patricia Martin, Deceased and on Behalf of All Wrongful Death Beneficiaries of Patricia Martin, Appellants
v.
ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.
No. 2003-CA-00094-COA.
Court of Appeals of Mississippi.
May 11, 2004.
*776 Pat M. Barrett, Joseph L. McNamara, Derek Arthur Wyatt, Richard Runft Barrett, Lexington, attorneys for appellants.
Chad Michael Knight, George H. Ritter, Jackson, attorneys for appellee.
EN BANC.
LEE, J., for the Court.
¶ 1. On the morning of June 4, 1996, Patricia Martin left her home in Rankin County for work via her usual route along Old Pearson Road which intersects a railroad crossing. At the crossing, Old Pearson Road runs roughly east and west, and the tracks run roughly north and south. Approximately 289 feet from the crossing is a round railroad advance warning sign. About 250 feet from the crossing a railroad symbol is painted on the roadway. Twenty feet from the track a stop bar is painted on the roadway. Posted between the stop bar and the railroad is a reflectorized railroad crossbuck sign. Martin proceeded across the tracks without stopping to look for a train. Tragically, Martin was struck by a northbound train and was killed. Martin's wrongful death beneficiaries filed suit against Illinois Central Railroad ("ICRR") and Richard Whiddon, the train's engineer.
¶ 2. During the course of litigation, Sharon Clark filed a motion to abandon certain liability theories and to supplement the record with color photographs. In that motion, Clark requested that the court grant her authority to abandon and/or withdraw all theories of liability in this case except for the following: (1) claims based upon sight distance as a result of excessive vegetation growing on Illinois Central's right of way, and (2) claims based upon the adequacy of the audible warning given of the train's approach. At the trial, the jury found for the defendants. Clark moved for a new trial pursuant to Rule 59 of the Mississippi Rules of Civil Procedure. The trial court denied the motion, and Clark has appealed, citing nine assignments of error.

GENERAL OVERVIEW OF THE LAW
¶ 3. Duties and obligations at railroad crossings, both on the part of railroad operators and upon automobile drivers, is predominately a matter of statutory law. Mitcham v. Illinois Cent. Gulf R. Co., 515 So.2d 852, 854 (Miss.1987). The principal statute that describes these duties and obligations is found in Mississippi Code Annotated Section 77-9-249, which provides in pertinent part the following:
(1) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within fifty (50) feet but not less than fifteen (15) feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
(a) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train;
(b) A crossing gate is lowered or when a human flagman gives or continues to *777 give a signal of the approach or passage of a railroad train;
(c) A railroad train approaching within approximately nine hundred (900) feet of the highway crossing emits a signal in accordance with Section 77-9-225, and such railroad train, by reason of its speed or nearness to such crossing, is an immediate hazard;
(d) An approaching railroad train is plainly visible and is in hazardous proximity of such crossing.
...
(4) At any railroad grade crossing provided with visible railroad crossbuck signs without automatic electric or mechanical signal devices ... the driver of a vehicle shall, in obedience to such railroad crossbuck sign, yield the right-ofway and slow to a speed reasonable for the existing conditions, and shall stop if required for safety at a clearly marked stop line, or if no stop line, within fifty (50) feet, but not less than fifteen (15) feet, from the nearest rail of the railroad, and shall not proceed until he can do so safely.
Miss.Code Ann. § 77-9-249 (Rev.2001).

STANDARD OF REVIEW
¶ 4. Clark's first four assignments of error stem from the trial court's instruction of the jury. On appeal, jury instructions are not reviewed in isolation; instead, they are read as a whole to determine if the jury was properly instructed. Payne v. Rain Forest Nurseries, Inc., 540 So.2d 35, 40 (Miss.1989). Defects in specific instructions do not require reversal "where all instructions taken as a whole fairlyalthough not perfectlyannounce the applicable primary rules of law." Id. However, if those instructions do not fairly or adequately instruct the jury, reversal is appropriate. Id.
¶ 5. Clark also contends that the trial court erred in refusing to admit eight aerial photographs, and in admitting a panoramic photograph offered by ICRR. The supreme court has held that the abuse of discretion standard is proper in reviewing the admission or exclusion of evidence. Fielder v. Magnolia Beverage Co., 757 So.2d 925, 928(¶ 9)(Miss.1999). Finding Clark's assignments of error to be without merit, this Court affirms the judgment of the trial court.

DISCUSSION

I. DID THE TRIAL COURT ERR IN REFUSING JURY INSTRUCTION P-1?
¶ 6. Jury instruction P-1 reads as follows:
The Court instructs the jury that on June 4, 1996, the railroad crossing at Old Pearson Road where the collision in this case occurred was a public crossing which Mississippi law required Illinois Central to exercise reasonable care in its maintenance so as to make it reasonably safe.
¶ 7. The trial court properly denied this jury instruction. As ICRR argues, this instruction is both vague and misleading. Clark clearly abandoned all claims other than those based on (1) restricted sight distance due to vegetation on ICRR's right of way and (2) the adequacy of the warning given to sound of the train's approach. If granted, instruction P-1 would have opened the door to rampant speculation as to potential safety precautions and possible maintenance steps which were not at issue in this trial. In lieu of granting instruction P-1, the trial court granted instruction P-5.
The Court instructs the jury that if you find from a preponderance of the evidence that Illinois Central Railroad *778 Company failed to exercise reasonable care to maintain its right-of-way at the subject crossing with regard to vegetation during the period of time immediately before the accident so that the crossing was not reasonable safe for motorists, in that vegetation growing on the railroad right-of-way unreasonably obstructed motorists' view of approaching trains, and if you further find by a preponderance of the evidence that such a failure, if any, by Illinois Central was a proximate, contributing cause of the accident, then you must return a verdict for the plaintiffs against Illinois Central Railroad.
This instruction clearly addressed the issue of ICRR's duty to maintain the vegetation growing on the ICRR right-of-way. In reviewing all of the instructions as a whole, the jury was fairly and adequately instructed as to the applicable law; therefore, this assignment of error lacks merit.

II. DID THE TRIAL COURT ERR IN REFUSING JURY INSTRUCTION P-8A AND IN GRANTING JURY INSTRUCTIONS D-5 AND D-8?

1. Jury Instruction P-8A
¶ 8. Jury instruction P-8A provided as follows:
The Court instructs the jury that Patricia Martin was not under a duty to stop prior to the crossing unless you find from a preponderance of the evidence that the train was plainly visible to her.
¶ 9. The trial court did not abuse its discretion in denying this instruction. Section 77-9-249 of the Mississippi Code outlines the caution that should be exercised by a driver approaching a railroad crossing. Contrary to Clark's assertion, the statute simply does not provide that a driver is under no duty to stop unless a train is plainly visible. Subpart four specifically addresses a driver's duty when arriving at a crossing marked only by a crossbuck. This section provides that a driver shall slow down, yield the right-ofway, and stop if required for safety. Miss. Code Ann. § 77-9-249(4) (Rev.2001). The jury instruction offered by Clark clearly ignores this duty; therefore, the instruction neither fairly nor adequately instructs the jury as to the applicable law. The trial court did not abuse its discretion in refusing this instruction.

2. Jury Instruction D-5
¶ 10. Clark argues that the trial court erred in granting jury instruction D-5, arguing that when coupled with instruction D-8, these instructions effectively directed a verdict for ICRR. Again, in reviewing all of the instructions as a whole, this Court cannot find that the jury was improperly instructed. Instruction D-5 accurately follows the language of Section 77-9-249. The jury was not improperly instructed as to the applicable law.

3. Jury Instruction D-8
¶ 11. As submitted, jury instruction D-8 read, in pertinent part, as follows: "The Court instructs you that a driver approaching a railroad crossing which is in plain view and equipped with a stop sign is not permitted to drive at the maximum allowable speed without regard to the fact that she is approaching a railroad crossing."
¶ 12. Clark's attorneys objected to the instruction on the ground that there was a crossbuck, and not a stop sign at the railroad crossing. The trial court replaced "stop sign" with "crossbuck." Clark's counsel did not object further to the instruction.
¶ 13. The Mississippi Rules of Civil Procedure outline the obligation of counsel *779 to memorialize on the record any objections to jury instructions.
No party may assign as error the granting or the denying of an instruction unless he objects thereto at any time before the instructions are presented to the jury; opportunity shall be given to make the objection out of the hearing of the jury. All objections shall be stated into the record and shall state distinctly the matter to which objection is made and the grounds therefor....
M.R.C.P. 51(b)(3). Clark's counsel clearly indicated their objections to this instruction, and the trial court promptly modified the instruction accordingly. Clark was given the opportunity to object to instruction D-8 as amended and failed to do so. Clark's failure to object at the trial level constitutes a waiver to raise the issue on appeal. Mitchell v. Broadway Transfer & Storage Co., 749 So.2d 289, 290(¶ 7)(Miss.Ct.App.1999).
¶ 14. The trial court did not abuse its discretion in granting instructions D-5 and D-8 and in refusing an instruction which was an inaccurate representation of the law. The jury was adequately instructed as to a driver's duty when approaching a railroad crossing; accordingly, the Court finds that this assignment of error lacks merit.

III. DID THE TRIAL COURT ERR IN REFUSING JURY INSTRUCTIONS P-3 AND P-8 AND IN GRANTING JURY INSTRUCTION D-13(A)?
¶ 15. Clark contends that the trial court erred in rejecting both instruction P-3 and instruction P-8. Instruction P-3 provided as follows:
You are further instructed that both Illinois Central Railroad Company and its engineer Richard Whiddon were under a duty to exercise reasonable care in the operation of their train for the safety of motorists using the Old Pearson Road crossing at the time of the collision, including sounding a reasonably adequate audible warning of the train's approach to the Old Pearson Road crossing, beginning at least 900 feet prior to the crossing.
Instruction P-8 also addressed the adequacy of the warning whistle.
The Court instructs the jury that if you believe from a preponderance of the evidence that the locomotive engineer Richard Whiddon failed to sound a reasonable adequate audible warning of the train's approach to the Old Pearson Road crossing where the collision happened, and that such failure, if any, was a proximate, contributing cause of the collision, then you must return a verdict for the plaintiffs against the defendant Illinois Central Railroad Company, and you may also return a verdict against Richard Whiddon.
¶ 16. This Court does not consider rejected jury instructions in a vacuum. Wright v. Stevens, 445 So.2d 791, 795 (Miss.1984). Instead, this Court looks to all the instructions given, and considering the court's total charge to the jury, if the point encompassed by the rejected instruction was fairly included in other instructions given to the jury, reversal is not required. Id. at 795.
¶ 17. The rejection of these two instructions was proper on at least two grounds. First, the language of instruction P-3 muddies the statutory guidelines outlining an approaching train's duty to warn, while instruction P-8 altogether ignores it. Section 77-9-225 clearly requires that a train approaching a crossing "shall cause the bell to be rung or the whistle or horn to be blown at the distance of at least three hundred (300) yards from the place where *780 the railroad crosses over any public highway or municipal street." Miss.Code Ann. § 77-9-225 (Rev.2001). Instructions P-3 and P-8 substitute ambiguous language for the standard clearly enunciated in the statute.
¶ 18. Additionally, the duty encompassed in instructions P-3 and P-8 was adequately and accurately addressed in instruction D-13(a), which addressed ICRR's duty to warn of its approach in light of the statutory guidelines. Accordingly, this Court finds that this assignment of error lacks merit as well.

IV. DID THE TRIAL COURT ERR IN GRANTING JURY INSTRUCTION D-7?
¶ 19. Clark argues that the trial court erred in granting jury instruction D-7. Clark objected to the submitted instruction for two reasons, the first of which was that the instruction referred to the wrong type of vehicle. Additionally, the original instruction provided that Martin was under a duty to stop her vehicle if the train was blowing its horn and presented an immediate hazard or the approaching train was clearly visible and in hazardous proximity to the crossing. The trial court corrected both of these errors, first by changing the referenced vehicle, and next by changing the "or" to "and." Having reviewed these changes, Clark's attorney stated that he had no further objections to this instruction.
¶ 20. As addressed in Section II, a party must object on the record to a submitted jury instruction, and the party must distinctly state his grounds for the objection. M.R.C.P. 51(b)(3). Clark clearly indicated two objections to this instruction, and the trial court edited the instruction accordingly. Clark was given the opportunity to object to instruction D-7 as amended and failed to do so. This failure to object at the trial level constitutes a waiver of the issue on appeal. Mitchell, 749 So.2d at 290.

V. DID THE TRIAL COURT ERR IN GRANTING ICRR'S MOTION IN LIMINE AS TO VEGETATION AND WARNING DEVICES?
¶ 21. Clark's fifth and sixth assignments of error stem from the trial court's granting ICRR's motion in limine excluding any claim, evidence, or argument that additional or different warning devices should have been installed. Because the instruction D-9 was a cautionary instruction granted due to Clark's violation of this order, this Court will first discuss the validity of the order.
¶ 22. We use the abuse of discretion standard in reviewing the admission or exclusion of evidence. Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997). The trial court does not abuse its discretion in granting a motion in limine if the court determines that (1) the material or evidence in question will be inadmissible at trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury. Whittley v. City of Meridian, 530 So.2d 1341, 1344 (Miss.1988) (adopting the test set forth by the Kansas Supreme Court in State v. Quick, 226 Kan. 308, 311, 597 P.2d 1108 (1979)).
¶ 23. Clark argues that the trial court erred in granting ICRR's motion in limine, which prevented counsel from arguing, suggesting or offering evidence or testimony that the type of warning device present at the crossing supports their contention that ICRR negligently maintained the vegetation on its right-of-way.
*781 ¶ 24. The trial court clearly did not abuse its discretion in granting the order precluding evidence or testimony regarding the sufficiency of the warning device at the crossing. The first criteria under Whittley is whether or not the material in question would be inadmissible. Because Clark limited her theories of recovery, any evidence or material relating to the adequacy of the warning signs would be irrelevant and therefore inadmissible. M.R.E. 402 (all relevant evidence is admissible, all irrelevant evidence is inadmissible). The second criteria under Whittley is whether the offer or reference would tend to prejudice the jury. Alluding that ICRR could have constructed more adequate warning signs would most certainly have prejudiced ICRR. The trial court did not abuse its discretion in precluding evidence regarding inadequate warning devices.

VI. DID THE TRIAL COURT ERR IN GRANTING JURY INSTRUCTION D-9?
¶ 25. Clark argues that the trial court erred in granting instruction D-9, which was a cautionary instruction advising the jury that the warning devices and warning signs were adequate as a matter of law. Specifically instruction D-9 provided as follows:
The Court instructs the jury that the warning devices and signs at the crossing were adequate as a matter of law and you may not find the Defendants negligent for failing to install additional or different warning devices.
¶ 26. Clark argues that the instruction was confusing and misleading to the jury and unfairly prejudicial to the Plaintiffs because "the adequacy of the signals at the crossing where Patricia Martin was killed was not an issue in the case and therefore was irrelevant." Clark is correct in asserting that the adequacy of the signals at the crossing was irrelevant. However, during the course of the trial counsel clearly broached the subject and violated the order precluding such information during his cross-examination of ICRR's corporate representative, Kenneth Robinson.
Q. Okay. Mr. Robinson, would you agree that Ms. Martin had only two ways to know that a train was coming? She would either see it or hear it?
A. I would agree with that if she was listening and looking.
Q. Yes, sir. If she was listening and looking, is there anyway she could have known a train was coming other than to hear or see it?
A. Other than the fact that she lived in the area. She was familiar with the crossing. She had been over it many, many times....
Q. Yes, sir. Did any of the signs present at that crossing on June 4, `96 tell Patricia Martin that a northbound train was coming at that crossing at 38 to 48 miles per hour?
BY MR. RITTER: Excuse me, Your Honor. I am going to object to that. The Court ruled that the warning signs are adequate as a matter of law. Mr. Barrett knows that, and it was raised prior to trial.
BY THE COURT: Sustained.
¶ 27. A trial court may give a cautionary instruction when a party improperly injects inadmissible evidence into a trial before a jury. Young v. State, 831 So.2d 585 (Miss.Ct.App.2002). If the inadmissible evidence causes irreparable harm, the court has full discretion to declare a mistrial; however, if the inadmissible evidence is less than irreparably harmful, the court may cure the harm by issuing appropriate instructions. Id. at 587. The cautionary instruction was granted due to *782 Clark's attempt to elicit testimony regarding the adequacy of the signals at the crossing where Martin was killed. This Court finds that the trial court did not abuse its discretion in granting the cautionary instruction; therefore, this assignment of error fails as well.

VII. DID THE TRIAL COURT ERR IN REFUSING TO ADMIT INTO EVIDENCE EIGHT AERIAL PHOTOGRAPHS OF THE CROSSING?
¶ 28. It is well settled in this State that the admission of photographs is a matter left to the sound discretion of the trial judge and that his decision favoring admissibility will not be disturbed absent a clear abuse of that judicial discretion. Hart v. State, 637 So.2d 1329, 1335 (Miss. 1994). The trial court excluded the eight photographs for a number of reasons, namely (1) the pictures were not produced to counsel opposite until August 2002 although the pictures were taken during 1997 and requested during discovery shortly thereafter; (2) the pictures did not depict the view of either the vehicle or the train engineer; (3) some pictures were taken from angles at which the road was not visible; (4) the pictures were prejudicial; and (5) the pictures were cumulative. Clark has failed to show a clear abuse of the trial court's discretion in admitting one of nine aerial photographs. Accordingly, this assignment is without merit as well.

VIII. DID THE TRIAL COURT ERR IN ADMITTING INTO EVIDENCE THE PANORAMIC PHOTOGRAPH TAKEN BY ICRR RISK MANAGER?
¶ 29. As discussed, supra, the trial court is granted broad discretion regarding the admissibility of photographs. Clark argues that the trial court erred in admitting a panoramic picture of the accident scene because the picture distorted the accident scene. Four witnesses verified that the picture accurately depicted the view an eastbound motorist would have if they were looking towards the south. This Court finds no abuse of discretion in admitting the panoramic photograph.

IX. DID THE TRIAL COURT ERR IN PROHIBITING CLARK'S COUNSEL DURING CLOSING ARGUMENT FROM MAKING CALCULATIONS USING MILES PER HOUR, FEET PER SECOND, AND TIME COVERED IN TRAVELING A FIXED DISTANCE?
¶ 30. Clark's final contention is that the trial court erred in prohibiting counsel from using mathematical calculations which were not supported by expert testimony during closing arguments. The record on appeal must affirmatively show that the point complained of was presented to the trial court and the trial court ruled adversely to the appellant. Pennington v. Dillard Supply, Inc., 858 So.2d 902(¶ 6) (Miss.Ct.App.2003). "The appellant has the duty of insuring that the record contains sufficient evidence to support his assignments of error on appeal." Oakwood Homes Corp. v. Randall, 824 So.2d 1292(¶ 4) (Miss.2002). "Facts asserted to exist must and ought to be definitely proved and placed before us by a record, certified by law; otherwise, we cannot know them." Id. In this case, the closing arguments were not included in the record before this Court, nor did Clark make a proffer of the information she was prohibited from arguing in closing. Clark should have included the necessary information in the record. Because Clark has failed to do so, this error is not properly before the Court, and we are unable to consider this assignment of error.

*783 CONCLUSION
¶ 31. The record before this Court presents a tragic and senseless loss of life. This case was ably and zealously litigated by both sides; however, on the record before us, none of the assignments of error merit reversal.
¶ 32. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS ARE TAXED TO THE APPELLANTS.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., THOMAS, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.