## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2018-KA-00395-COA

**DAROSKY DERRELL FORD A/K/A DAROSKY FORD**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                        **APPELLEE**

DATE OF JUDGMENT:            02/16/2018
TRIAL JUDGE:                 HON. RICHARD W. MCKENZIE
COURT FROM WHICH APPEALED:   SCOTT COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      OFFICE OF STATE PUBLIC DEFENDER
                             BY: MOLLIE MARIE McMILLIN
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: ALICIA MARIE AINSWORTH
DISTRICT ATTORNEY:           STEVEN SIMEON KILGORE
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:                 AFFIRMED - 06/04/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**GREENLEE, J., FOR THE COURT**:

¶1.     A jury in the Scott County Circuit Court convicted Darosky Ford of two counts of possession of a firearm by a convicted felon, and the court sentenced him, as a habitual offender, to serve ten years for each count in the custody of the Mississippi Department of Corrections (MDOC). The court ordered that Ford's sentences be served consecutively and that he pay all court costs. Subsequently, Ford appealed, claiming that (1) his statutory and constitutional rights to a speedy trial were violated, and (2) the verdicts are against the overwhelming weight of the evidence. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     On December 2, 2015, Ford was indicted for kidnapping and four counts of possession of a firearm by a convicted felon. The indictment alleged that on or about March 28, 2015, Ford (a convicted felon) kidnapped Mardess Toney and possessed a DPMS-A-15 assault rifle, a Mossberg .270-caliber rifle, a Rossi .38-caliber handgun, and a Rock Island. 38-caliber handgun.

¶3.     At trial, Toney testified that around 7:00 p.m. on March 27, 2015, she met Ford at his uncle's house in Homewood, Mississippi. Ford and Toney had dated on and off for approximately seven and a half years. But that night, they planned on discussing moving in together.

¶4.     Ford and Toney drove to the Apple Tree Inn in Forrest, Mississippi, and paid for a motel room. Then they went to Pizza Hut for dinner. Afterward, they returned to the motel, had sex, and according to Toney, Ford smoked some methamphetamine. Toney testified that sometime around midnight, Ford accused her of cheating on him. And according to Toney, Ford hit and kicked her, choked her with a belt, and then hogtied her with her shoelaces.[1]

¶5.     To distract Ford, Toney told him that some of their coworkers were trying to kill him. Then Ford called Aquarius Lindsey,[2] so that she could come to the motel and listen to what Toney was saying. Toney testified that when Lindsey arrived around 4:30 a.m., Ford told

---

[1] On cross-examination, defense counsel asked, "Now, Ms. Toney, isn't it true that the tying up and all that was . . . part of you[r] sexual relations?" Toney replied, "No, it was not."

[2] Ford and Lindsey had a child together.

2

Lindsey to get her (Toney's) Rock Island .38-caliber handgun from the passenger door of his vehicle. According to Toney, Ford tried to shoot her in the head two or three times, but the gun would not fire.

¶6. Eventually, Ford untied Toney. And around 7:30 a.m. or 8:00 a.m., the three left the motel together. Toney testified that Ford put the gun in his lap and drove her and Lindsey to his father's house in Midway, Mississippi. According to Toney, Ford asked his father where he kept his guns. But Ford's father refused to tell him. So Ford searched the house and retrieved a DPMS-A-15 assault rifle, a Mossberg .270-caliber rifle,[3] and a Rossi .38-caliber handgun. Then Ford put the guns in his vehicle.

¶7. Toney testified that Ford then drove her and Lindsey to his uncle's house and parked in a wooded area. Ford called his family to tell them that some of his coworkers wanted to kill him. But Ford's family told him that the police were looking for him. So, according to Toney, Ford buried the guns in the woods. And around 1:00 p.m., they went to the police station so Ford could turn himself in.

¶8. Tim Rigby, an investigator with the Forest Police Department, testified that Ford was taken into custody and that Toney gave a statement. Afterward, he went to the Apple Tree Inn, where he found a bag containing other small bags, a shirt, shoelaces, and a belt. Investigator Rigby also testified that on April 6, 2015, Ford waived his *Miranda*[4] rights and stated: "I didn't kidnap that girl, but I choked the f[***] out of her."

---

[3] Toney had trouble identifying the type and caliber of the gun.

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

¶9.     Investigator Jody Stewart, with the Scott County Sheriff's Department, testified that after Toney gave her statement, he went to Ford's uncle's house and found a DPMS A-15 assault rifle in the woods. He testified that he continued to search the area, but eventually had to leave. When he returned to the wooded area two days later, he found a Mossberg .270-caliber rifle, a Rock Island .38-caliber handgun, and a Rossi .38-caliber handgun. Investigator Stewart testified that the guns were not buried together and that the guns had varying degrees of rust on them.

¶10.    Jamie Bush, with the Mississippi Forensics Laboratory, examined the guns for fingerprints. Bush testified that he did not find any latent prints of value on either of the .38-caliber handguns. He explained that any prints may have been affected by environmental conditions. Bush testified that he found one latent print of value on the Mossberg .270-caliber rifle; however, the print did not match Ford's fingerprints. Finally, Bush testified that he found several latent prints of value on the magazine that was attached to the assault rifle. And four of the prints matched Ford's fingerprints.

¶11.    Prior to resting its case-in-chief, the State presented evidence that Ford had been previously convicted of a felony.

¶12.    After deliberating for a while, the jury announced it had reached a verdict. But because not all of the verdicts were unanimous, the jury was sent back to the jury room to deliberate. At some point, the jury asked how to vote for an acquittal. And then the jury asked what to do in the event it could not come to a unanimous decision on two of the

charges. The trial court gave the *Sharplin*[5] instruction, and finally the jury returned unanimous verdicts on all five counts. The jury acquitted Ford of kidnapping and two counts of felon in possession of a firearm. But the jury found Ford guilty of being a felon in possession of a DPMS-A-15 assault rifle and a Rossi .38-caliber handgun.

¶13. Subsequently, the trial court sentenced Ford, as a habitual offender, to serve ten years on each count in the custody of the MDOC. After the denial of Ford's motion for a new trial, Ford appealed.

## DISCUSSION

**I.     Whether Ford's statutory and constitutional rights to a speedy trial were violated.**

**A.     Statutory Right**

¶14. In his statement of the issues, Ford claims his statutory and constitutional rights to a speedy trial were violated. But in the argument section of his brief, Ford does not discuss (and seems to have abandoned) his claim that his statutory right to a speedy trial was violated. *See Randolph v. State*, 852 So. 2d 547, 558 (¶29) (Miss. 2002) ("In the absence of meaningful argument and citation of authority, [appellate courts] generally will not consider the assignment of error."). Nevertheless, we will address Ford's statutory speedy-trial claim.

¶15. Mississippi Code Annotated section 99-17-1 (Rev. 2015) provides that "[u]nless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." But this Court has held that "if a defendant fails

---

[5] *Sharplin v. State*, 330 So. 2d 591 (Miss. 1976).

to raise the statutory right to a speedy trial within 270 days of his arraignment, he acquiesces to the delay." *Collins v. State*, 232 So. 3d 739, 744 (¶16) (Miss. Ct. App. 2017) (quoting *Whitaker v. State*, 114 So. 3d 725, 730 (¶18) (Miss. Ct. App. 2012)). Our supreme court has also held that "a defendant may effectively waive his right to complain of not being tried within the 270-day period set out in section 99-17-1, when the defendant does not request or assert his right to a speedy trial or object to a delay, especially when the defendant fails to show any prejudice in the failure to be tried within the statutory 270-day period." *Id.* (quoting *Guice v. State*, 952 So. 2d 129, 142 (¶28) (Miss. 2007)).

¶16. Ford was arraigned during the October 2015 term and was not tried until February 2018, which was more than 270 days later. But Ford failed to assert his statutory right to a speedy trial until the day before trial. Accordingly, Ford waived his statutory right to being tried within 270 days of arraignment.

### B. Constitutional Right

¶17. In addition to the statutory right to a speedy trial, our federal and state constitutions provide that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." U.S. Const. amend. VI; *accord* Miss. Const. art. 3, § 26. "In determining whether a defendant's constitutional right to a speedy trial has been violated, courts must analyze four factors: 1) the length of delay, 2) the reason for the delay, 3) the defendant's assertion of his right to a speedy trial, and 4) prejudice to the defendant." *Collins*, 232 So. 3d at 744 (¶18) (quoting *Hurst v. State*, 195 So. 3d 736, 741 (¶11) (Miss. 2016)). "The United States Supreme Court has held that courts must engage in a difficult and sensitive

6

balancing process of the four factors because none of the factors is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id*. (internal quotation marks omitted). "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*.

### 1. Length of Delay

¶18. A full balancing test "is warranted only if the delay was presumptively prejudicial." *McBride v. State*, 61 So. 3d 138, 142 (¶7) (Miss. 2011) (citing *Stark v. State*, 911 So. 2d 447, 450 (Miss. 2005)). Our supreme court has held that "a delay of more than eight months is presumptively prejudicial." *Id*.

¶19. The constitutional right to a speedy trial attaches at the time of formal indictment or information, or when the defendant is arrested, whichever occurs first. *Id*. at (¶8). Ford was arrested on March 28, 2015, and indicted on December 2, 2015. Ford's trial began on February 13, 2018. Because the delay in this case was more than eight months, a full balancing test is required.

### 2. Reasons for the Delay

¶20. "Once there is a finding that the delay is presumptively prejudicial, the burden shifts to the prosecution to produce evidence justifying the delay and to persuade the trier of fact of the legitimacy of these reasons." *Bonds v. State*, 938 So. 2d 352, 356 (¶11) (Miss. Ct. App. 2006) (quoting *DeLoach v. State*, 722 So. 2d 512, 517 (¶17) (Miss. 1998)). Therefore, "we must determine the reason for the delay and examine the unique circumstances of each case." *Id*. (citing *Stark*, 911 So. 2d at 450 (¶11)). This Court has noted that "different

7

weights should be given to different reasons for the delay." *Id*. (citing *Barker v. Wingo*, 407 U.S. 514, 531 (1972)). "A deliberate attempt by the State to delay the trial in order to hamper the defense should be weighted heavily against the State." *Id*. at 357. But "a more neutral reason for the delay such as negligence or overcrowded dockets should be weighed less heavily." *Id*. "The burden calls on the State to articulate the reason for the delay by showing either that the delay was caused by the defendant or was caused for a good cause." *Id*. (citing *Stark*, 911 So. 2d at 450 (¶11)).

¶21.    Although Ford was arrested before he was indicted, Ford does not take issue with the delay from his arrest until his indictment. Rather, he takes issue with the delay from his indictment until his trial. During the hearing on Ford's motion to dismiss for lack of a speedy trial, the State noted that the Circuit Court convened in Scott County in February, June, and October. Therefore, according to the State, the first time Ford's case could have been placed on the docket was during the February 2016 term. This delay cannot be attributed to the State. *See McBride v. State*, 61 So. 3d 174, 180 (¶15) (Miss. Ct. App. 2010).

¶22.    In February 2016, the case was continued. But the State did not provide any reason for the delay. In June 2016, the case was continued due to a crowded docket. Then, in October 2016, the trial court entered an order granting a continuance until the February 2017 term. The order noted that the continuance was requested by Ford. According to the State, the case was continued again in February 2017. But the State did not provide any reason for the delay. Then, in June 2017, the judge entered an order of recusal, and a special judge was appointed in July 2017. Ford's case was apparently continued again until February 13,

2018—Ford's trial date.

¶23. The delay Ford caused cannot be weighed against the State. And any delay caused by an overcrowded docket or the judge's recusal should be weighed only slightly against the State. *See Franklin v. State*, 136 So. 3d 1021, 1034 (¶48) (Miss. 2014). But this Court has held that where the State does not show good cause for a portion of the delay, it weighs in favor of the accused. *Guice*, 952 So. 2d at 190 (¶11). Accordingly, this factor weighs in favor of Ford.

### 3. Assertion of the Right to a Speedy Trial

¶24. As discussed above, Ford first mentioned his right to a speedy trial the day before he went to trial. And even then, he sought only dismissal of the indictment, not a speedy trial. *See McBride*, 61 So. 3d at 181 (¶20) ("[A] demand for a speedy trial is distinct from a demand for dismissal due to violation of the right to a speedy trial. . . . A motion for dismissal seeks discharge, not trial."). Accordingly, this factor weighs against Ford.

### 4. Prejudice

¶25. "To determine whether the delay resulted in actual prejudice the Court considers three interests that the right to a speedy trial was meant to protect: '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Collins*, 232 So. 3d at 746 (¶26) (quoting *Taylor v. State*, 162 So. 3d 780, 787 (¶16) (Miss. 2015)). Ford bears the burden of showing actual prejudice "since the defendant is clearly in the best position to show prejudice under [this factor]." *Id*.

9

¶26. Although Ford's incarceration was lengthy, "incarceration alone does not constitute prejudice." *Johnson v. State*, 68 So. 3d 1239, 1245 (¶17) (Miss. 2011). Ford suggests that he suffered from anxiety. But Ford has not presented any evidence that he has ever suffered from symptoms of anxiety and concern as a result form his incarceration. Our supreme court has held that "evidence of legitimate anxiety and concern (medical records, documentation from the jail, etc.) must exist." *Id*. Accordingly, this factor weighs against Ford.

¶27. To summarize, the length of the delay and the reason for the delay weigh against the State. But Ford never demanded a speedy trial. And when he finally did raise the issue, his trial was twenty-four hours away. Most important, Ford fails to articulate any prejudice whatsoever. Balancing these factors, we agree with the trial judge that there was no violation of Ford's constitutional right to a speedy trial.

**II. Whether the jury's verdicts are against the overwhelming weight of the evidence.**

¶28. Ford claims that the jury's verdicts are against the overwhelming weight of the evidence. Ford points out that he was convicted of two counts and acquitted of two counts of felon in possession of a firearm. He asserts that the State presented the same evidence for each of the four counts and therefore the verdicts are inconsistent.

¶29. In *Sanders v. State*, 63 So. 3d 497, 499 (¶1) (Miss. 2011), "the defendant killed his grandfather and then his grandmother . . . in a matter of minutes, and the jury returned a verdict finding the defendant not guilty by reason of insanity for the murder of his grandfather, and a verdict finding the defendant guilty for the murder of his grandmother." *Jones v. State*, 95 So. 3d 641, 646 (¶17) (Miss. 2012). This Court stated, and our supreme

10

court agreed: "When analyzing the weight of the evidence that supports a jury's verdict, we are simply prohibited from considering, in any way, what the jury did on another count. It is irrelevant and immaterial. It is as if it never happened." *Sanders*, 63 So. 3d at 504 (¶20). The supreme court further stated, "We will not consider the jury's deliberation or its conclusions on another count of the indictment, because doing so would be speculative and unreliable." *Id*. Instead, we are to "examine the evidence presented at trial, as we would do in any other case in which the issue of weight has been raised." *Id*.

¶30. At trial, Toney testified that she saw Ford retrieve a Rossi .38-caliber handgun and a DPMS-A-15 assault rifle from his father's house. And she watched Ford as he buried the guns in the woods at his uncle's house. The forensic scientist testified that he found several latent prints of value on the magazine that was attached to the assault rifle. And four of the prints matched Ford's fingerprints. Finally, the State presented evidence that Ford had previously been convicted of a felony. Accordingly, we cannot say that Ford's convictions are against the overwhelming weight of the evidence.

## CONCLUSION

¶31. Ford waived his statutory right to a speedy trial by failing to timely assert it, and there was no violation of his constitutional right to a speedy trial. Furthermore, Ford's convictions are not against the overwhelming weight of the evidence. Therefore, we affirm his convictions and sentences.

¶32. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., TINDELL, LAWRENCE AND C. WILSON, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND**

11

**DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS AND McDONALD, JJ.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶33. Were there no speedy trial issue, I would agree that the conviction should be affirmed. However, I believe this case is a per se violation of the right to a speedy trial.

¶34. The State bears the burden of bringing a defendant to trial. *Johnson v. State*, 68 So. 3d 1239, 1243 (¶10) (Miss. 2011). Daroksy Ford was not brought to trial until 803 days after his indictment. As the majority notes, this delay is presumptively prejudicial. *Smith v. State*, 550 So. 2d 406 (a delay of eight or more months is presumptively prejudicial). Of those 803 days, 671 were either directly attributable to the State or went unexplained. Unexplained delays must be weighed against the State. *Watson v. State*, 848 So. 2d 203, 208 (¶12) (Miss. Ct. App. 2003) ("The risk of 'non-persuasion rests with the prosecution,' and where the record is silent as to the cause of delay, this factor must weigh in favor of the defendant."); *see also Perry v. State*, 233 So. 3d 750, 756 (¶9) (Miss. 2017) ("[When] the record is silent regarding the reason for the delay . . . 'the clock ticks against the State . . . .'").

¶35. The State argues that there is no showing of actual prejudice. It has already been established and agreed upon by both parties that the length of delay in this case presumes prejudice. In addition to the presumption, prejudice can also manifest in other ways. One of these ways is through the anxiety and concern of the accused. *Watson v. State*, 848 So. 2d 203, 208 (¶12) (Miss. Ct. App. 2003). Ford was facing a possible life sentence in this case; anxiety and concern are to be presumed.

12

¶36. The State also contends that Ford's motion to dismiss for lack of a speedy trial fails to satisfy a demand for a speedy trial. I find this argument to be an overly technical interpretation of the Mississippi statute and a deviation from what the Legislature had intended. Our Legislature created a safeguard for the right to a speedy trial statutorily by providing " . . . all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned." Miss. Code Ann. § 99-17-1 (Rev. 2015). The plain and unambiguous language of the statute does not provide for any factors to be weighed. Nor does the state include any technical caveats that a failure to demand a speedy trial in a particular fashion negate one's right. As previously stated, it is the duty of the State, not the defendant, to bring him to trial.

¶37. Three hundred six days passed from the time Ford was arrested and the day he was first brought to trial. On that date he requested a continuance because by the time the trial arrived, his court-appointed attorney had been elected as a circuit judge and had to withdraw from the case. The trial court granted the motion and continued the trial to February 2017. It was then an entire year after the new trial date before Ford was finally brought to trial. The record is silent as to why the case was not set for trial prior to February 2018. More than 270 days had lapsed before Ford was first brought to trial. Another year lapsed after his continuance had expired. These number of days violated the statute twice over.

¶38. With respect to the majority, the uncontested facts prove that Darosky Ford was deprived of his right to a speedy trial. As to the remaining issues he raises in his appeal, I agree the conviction must be affirmed. Yet fidelity to the constitution requires reversal for

13

the speedy-trial violation.

**WESTBROOKS AND McDONALD, JJ., JOIN THIS OPINION.**