GRIFFIS, P.J.,
for the Court:
¶ 1. An .Alcorn County jury found Timmy Dale Whitaker guilty of aggravated assault, under Mississippi Code Annotated section 97-3-7(2)(a) (Supp.2011), and burglary of a dwelling, under Mississippi Code Annotated section 97-17-23 (Supp.2011). On appeal, Whitaker argues that: (1) the circuit court erred in denying a mistrial following comments made by prospective jurors during voir dire; (2) his constitutional and statutory right to a speedy trial were violated; (3) the circuit court erred by not suppressing the statement he made to investigators while under the influence of narcotics; and (4) the jury’s verdict was against the overwhelming weight of the evidence. We find no reversible error and affirm.
*728 FACTS
¶ 2. On August 5, 2008, Whitaker, Samuel Patterson Jr., and William Danny Whitaker (Danny), went to William Clark’s home in search of money to purchase drugs. Danny told Whitaker that he and Darlene Bush, Clark’s granddaughter, had gotten money from Clark on a previous occasion. Danny said that if Clark would not give them money again, they would take it.
¶ 3. Whitaker drove Patterson and Danny to Clark’s home. They stopped to pick up a crowbar and a pipe from Patterson’s workplace. Whitaker then dropped Danny and Patterson off at Clark’s trailer, where they broke in, severely beat Clark, and took his wallet containing several hundred dollars. The two took Clark’s telephone so that he would be unable to call for help. Whitaker returned to pick up Danny and Patterson approximately twenty minutes after he had dropped them off. Clark’s daughter found Clark the next morning lying in bed, severely beaten. Clark was transported to Magnolia Hospital and then transferred to the Regional Medical Center in Memphis, Tennessee. Clark was released from the hospital but later died on November 8, 2008.
¶4. On November 4, 2008, during the police investigation, Detective Jerry Rogers picked up Whitaker to question him about the crime. Whitaker was Miran-dized, but he did not give a statement. The next day, while Whitaker was in the hospital and taking morphine and lortab to control his pain, he requested to speak to Detective Rogers. Detective Rogers and another investigator went to the hospital. There, Detective Rogers verbally Miran-dized Whitaker, who then proceeded to give a statement about his involvement in the crime. Though he confessed, Whitaker refused to sign the statement.
¶ 5. Whitaker was indicted on January 21, 2009, and arraigned on March 25, 2009. The matter continued upon Whitaker’s request and was set for trial in the August term. On June 22, 2009, Whitaker filed for a continuance, which was granted. On September 16, 2010, the prosecution filed for a continuance due to the unavailability of a witness who was suffering from health problems. The circuit court granted the prosecution’s request and a trial date was set for November 8, 2010. Whitaker was convicted on November 9, 2010.
¶ 6. At a pretrial hearing, Whitaker made a motion to suppress the statement he gave while in the hospital. The circuit court denied the motion, noting that though the statement was not adopted as Whitaker’s own, it was still a record of the conversation, and those present who heard about the statements could testify about what they heard.
¶ 7. At trial, Danny testified that when Whitaker served as the getaway driver, he knew that the purpose of the trip to was to break into the house and rob Clark by force. Further, Detective Rogers testified that he advised Whitaker of his Miranda rights and that Whitaker did not appear to be under the influence of any drug or narcotic at the time he gave his statement.
¶ 8. At the conclusion of the trial, the jury convicted Whitaker of aggravated assault and burglary of a dwelling. It was also determined that Whitaker was a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev.2007). Whitaker was sentenced, as a habitual offender without eligibility for parole or probation, to twenty-five years for burglary of a dwelling and twenty years for aggravated assault, all in the custody of the Mississippi Department of Corrections. Whitaker was also ordered to pay a $10,000 fine.
*729 STANDARD OF REVIEW
¶ 9. “A motion for new trial challenges the weight of the evidence.” Wilkins v. State, 1 So.3d 850, 854 (¶ 11) (Miss.2008) (quoting Ivy v. State, 949 So.2d 748, 754 (¶ 21) (Miss.2007)). The trial court’s decision to grant or deny the motion falls under an abuse-of-discretion standard on appeal. Id. The evidence is considered “in the light most favorable to the verdict,” and we will not order a new trial unless the verdict is found to be “so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005).
ANALYSIS

1. Whether the jury panel was tainted by the comments made by jurors during voir dire.

¶ 10. During voir dire, in the presence of the entire jury panel, three potential jurors responded to questions from the court. Whitaker contends the answers were prejudicial.
¶ 11. The first prospective juror indicated that he had jailed Whitaker, and that he had been sued by him. The second prospective juror responded that she was a former correctional officer and was a lifelong associate of the Whitaker family. The third prospective juror indicated that he was a jail administrator while Whitaker had been incarcerated for an unrelated crime. All three jurors were dismissed for cause. After their dismissal, Whitaker moved for a mistrial based on the three juror’s comments. The circuit court denied the motion. The judge instructed the jury that nothing had been offered into evidence during voir dire and that they could only make their decision based on evidence presented at trial. The judge then asked the jurors if they could be fair and impartial and directed them to raise their hands if they had any reservations about their ability to be fair and impartial. There were no responses from the jury.
¶ 12. Further, at the close of voir dire, the circuit judge queried the panel as follows:
The State and defense have posed quite a number of questions, and once again, it may be that somehow we did not ask the right question. There’s something dancing around in your mind that we need to know. And I want you to tell me if there is anything, whether we’ve talked about it or not, that would deprive you of the ability to afford both the State and the defendant a fair and impartial trial? Anything whatsoever?
(NO RESPONSE)
Now, during the course of questions by the State and the defendant, there have been responses from your fellow venire persons about their knowledge of this or that or the other. Is there anything about any of those responses that cause you to know something you didn’t know, I suppose, or anything that would have any bearing on your ability to fairly and impartially sit as a juror in the trial of this case?
(NO RESPONSE)
¶ 13. The circuit judge instructed the jury that their decision on Whitaker’s guilt or innocence could only be based on the evidence presented at trial, not statements made during voir dire, and he once again asked them to raise their hands if they had any reservations about their ability to be fair and impartial. No juror raised his or her hand.
¶ 14. There is a presumption in Mississippi that juries have followed the instructions of the trial judge. Young v. State, 831 So.2d 585, 589 (¶ 11) (Miss.Ct.App.2002) (citing Ragin v. State, 724 So.2d *730 901, 904 (¶ 13) (Miss.1998)). To that end, the Mississippi Supreme Court has also held that when follow-up questions reveal there is nothing to indicate that a venire panel is biased, prejudiced, or would be less than fair in discharging its duty, it is proper for a trial judge to refuse to disqualify the entire jury panel. Benson v. State, 551 So.2d 188, 191 (Miss.1989). Further, the decision to declare a mistrial is within the sound discretion of the trial judge. Evans v. State, 725 So.2d 613, 649 (¶ 114) (Miss.1997) (quoting Brent v. State, 632 So.2d 936, 941 (Miss.1994)).
¶ 15. “While a comment by a single prospective juror during voir dire may taint the entire panel, where there is no evidence of such a taint, the court may correctly refuse to disqualify the entire panel from service if the jury affirms that it can render a verdict based solely on the evidence brought before the court.” Young, 831 So.2d at 589 (¶ 11) (citing Holland v. State, 705 So.2d 307, 339-40 (¶¶ 119-23) (Miss.1997)). This presumption also applies when multiple jurors make improper comments. Hopson v. State, 625 So.2d 395, 402-03 (Miss.1993).
¶ 16. Based on the presumption that juries follow the instruction of the trial judge, and the fact that the circuit judge repeatedly asked the jurors whether they could be fair and impartial in rendering a verdict at trial, it is clear that the judge did not abuse his discretion by allowing the jury to continue to trial. As in Young, there was no evidence in this case that the jury was tainted. Therefore, the circuit judge was within his discretion when he refused to grant a mistrial and disqualify the entire panel where they affirmed they could render a verdict based solely on the evidence brought before the court. This issue has no merit.

2. Whether Whitaker was denied, his statutory and constitutional rights to a speedy trial.

¶ 17. Mississippi Code Annotated section 99-17-1 (Rev.2007) states: “Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.”
¶ 18. Whitaker was arraigned on March 25, 2009, and his trial was on November 9, 2010 — more than 270 days later. However, this Court has “held that if a defendant fails to raise the statutory right to a speedy trial within 270 days of his arraignment, he acquiesces to the delay.” Roach v. State, 938 So.2d 863, 867 (¶ 9) (Miss.Ct.App.2006) (citing Mims v. State, 856 So.2d 518, 522 (¶ 11) (Miss.Ct.App.2003)). Whitaker did not make his motion to dismiss for the delay until the morning of trial — approximately 595 days after arraignment. Therefore, the circuit judge properly dismissed Whitaker’s motion because he was well outside the time frame to raise the statutory violation. This argument is without merit.
¶ 19. Amendment VI of the United States Constitution guarantees Whitaker’s right to a speedy trial. “The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.” Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905). Though the United States Supreme Court has rejected “the rule that a defendant who fails to demand a speedy trial forever waives his right,” it has also found that the defendant has a responsibility to assert his right. Barker v. Wingo, 407 U.S. 514, 528, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). There *731 fore, the United States Supreme Court has developed a balancing test that compels courts to approach speedy trial cases on an ad hoc basis. Id. at 530. Mississippi has also adopted the Barker factors to determine whether there has been a speedy-trial violation. Sharp v. State, 786 So.2d 372, 380 (¶ 15) (Miss.2001). The four factors analyzed are: the length of delay, the reason for the delay, the defendant’s assertion of his right, and prejudice to the defendant. Id.
¶ 20. In analyzing whether the constitutional right to a speedy trial has been violated, the Mississippi Supreme Court has noted that “although complying with the 270 day rule is suggestive of whether the constitutional speedy trial right has been violated, it is not dispositive.” Id. (citing Flores v. State, 574 So.2d 1314, 1321 (Miss.1990)). The supreme court has noted different considerations, such as the fact that the attachment of the right occurs at arrest rather than arraignment, and that a delay between arrest and trial of more than eight months establishes presumptive prejudice that triggers Barker analysis. Id. Here, there was just over a two-year delay between arrest and trial. Therefore, even though there was no statutory violation, the Barker factors must be considered to ensure that there was no constitutional violation.
¶21. Here, the length of delay from arrest to trial was approximately 735 days. Though this delay triggers the presumption of prejudice, the length of time does not shock the conscience because of the reasons for the delay. The continuances requested by Whitaker caused a 216-day delay. The State, on the other hand, requested one continuance because of a witness’s unavailability due to illness, only causing a 54-day delay. The State’s reason for the delay was clearly legitimate and did not maliciously deprive Whitaker of his right to a speedy trial.
¶ 22. Moreover, Whitaker did not assert his constitutional right to have a speedy trial. In fact, based on his requests for continuances, Whitaker appears to have wanted the proceedings to be delayed, rather than expedited. To that end, the only time Whitaker brought up the length-of-time issue was at a pretrial hearing the day before trial, long after his continuance was granted. It appears that rather than wanting to have his constitutional right to a speedy trial invoked during the trial, Whitaker simply wanted to argue a procedural defect after the fact in order to get the charges dismissed or a new trial. Further, the delays have not caused any prejudice to Whitaker, nor does he argue they have. Therefore, this Court finds that, weighing the Barker factors, Whitaker’s constitutional right to a speedy trial has not been violated. This issue has no merit.

3. Whether the circuit court erred by failing to suppress Whitaker’s confession.

¶ 23. The United States Supreme Court announced in Miranda:
There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind aré not barred by the Fifth Amendment!,] and their admissibility is not affected by our holding today.
Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
¶24. The voluntariness of a waiver, or of a confession, is a factual inquiry that must be determined by the trial judge from the totality of the circum *732 stances. Gavin v. State, 473 So.2d 952, 954 (Miss.1985) (citing Stevens v. State, 458 So.2d 726, 729 (Miss.1984)). This Court will not reverse a trial court’s finding that a confession was voluntary and admissible as long as that trial court applied the correct principles of law, and the finding is factually supported by the evidence. Greenlee v. State, 725 So.2d 816, 825 (¶ 21) (Miss.1998) (citing Haymer v. State, 613 So.2d 837, 839 (Miss.1993)). Further, where there is conflicting evidence about a confession’s admissibility, this Court “will not disturb the trial court’s finding unless it appears clearly contrary to the overwhelming weight of the evidence.” Wiley v. State, 465 So.2d 318, 320 (Miss.1985). No one factor is dispositive in the totality-of-circumstances test. Johnson v. State, 511 So.2d 1360, 1365 (Miss.1987). The supreme court held in State v. Williams, 208 So.2d 172, 175 (Miss.1968):
The fact that the accused is under the influence of liquor or drugs, which affect his recollection, does not make his confession inadmissible. The intoxicated condition of the accused at the time of making a confession does not, unless such intoxication goes to the extent of mania, affect the admissibility in evidence of such confession if it was otherwise a voluntary one, although the fact of intoxication may affect its weight and credibility with the jury.
¶ 25. In this case, the circuit judge conducted a hearing on the admissibility of Whitaker’s confession. Testimony established that Whitaker was the one who initiated the conversation the day he confessed. Moreover, Detective Rogers gave Whitaker a verbal Miranda warning in front of others, which Whitaker stated he understood. Whitaker did not appear to be intoxicated, nor has he asserted that his intoxication was to the extent of mania. Therefore, the circuit judge properly admitted the confession and allowed the jury to weigh its credibility. This issue has no merit.

U. Whether the verdict is against the overwhelming weight of the evidence.

¶ 26. “In reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, this Court will disturb a verdict only “when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.’ ” Smith v. State, 925 So.2d 825, 832 (¶ 16) (Miss.2006). The evidence is viewed in the light most favorable to the verdict. Withers v. State, 907 So.2d 342, 352 (¶31) (Miss.2005).
¶ 27. Whitaker contends that he was not aware of Danny and Patterson’s plan to assault Clark and steal money from him. But we find that, viewing the evidence in the light most favorable to the verdict and taking the supporting credible evidence as true, the evidence presented at trial supports that Whitaker knew the crimes he was committing and that he had the requisite knowledge and participation to support a guilty verdict.
¶ 28. Whitaker drove Danny to Patterson’s home, where Danny asked Patterson to go with them to get money for drugs from Clark. Whitaker then drove Danny and Patterson to Patterson’s workplace to pick up a crowbar. Whitaker drove Danny and Patterson to Clark’s house where Danny and Patterson used the crowbar to pry open Clark’s door and assault Clark. Even if we were to assume, as Whitaker claims, that Whitaker did not hear Danny explain his robbery plan to Patterson, it is reasonable to infer that Whitaker knew what was happening when the three stopped to get the crowbar used in the assault and that Whitaker dropped Danny and Patterson at Clark’s trailer only to return to pick them up twenty minutes *733 later. Further, Whitaker’s confession establishes his active involvement in the crimes. Accordingly, this issue has no merit.
¶ 29. THE JUDGMENT OF THE CIRCUIT COURT OF ALCORN COUNTY OF CONVICTION OF COUNT I, BURGLARY OF A DWELLING, AND SENTENCE OF TWENTY-FIVE YEARS, AND COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL AS A HABITUAL OFFENDER WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A FINE OF $10,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ALCORN COUNTY.
LEE, C.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR. IRVING, P. J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.