# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00316-COA

**ROTHELL CHAMBLISS A/K/A ROTHEL CHAMBLISS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

DATE OF JUDGMENT:               02/16/2016
TRIAL JUDGE:                    HON. LAMAR PICKARD
COURT FROM WHICH APPEALED:      JEFFERSON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                BY: JOSEPH SCOTT HEMLEBEN
DISTRICT ATTORNEY:              ALEXANDER C. MARTIN
NATURE OF THE CASE:             CRIMINAL - FELONY
TRIAL COURT DISPOSITION:        CONVICTED OF BURGLARY OF A
                                DWELLING AND SENTENCED AS A
                                HABITUAL OFFENDER TO TWENTY-FIVE
                                YEARS IN THE CUSTODY OF THE
                                MISSISSIPPI DEPARTMENT OF
                                CORRECTIONS, WITHOUT ELIGIBILITY
                                FOR PAROLE OR PROBATION
DISPOSITION:                    AFFIRMED - 05/23/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND GREENLEE, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1. A Jefferson County jury convicted Rothell Chambliss of burglary of a dwelling, and the trial court subsequently sentenced Chambliss, as a habitual offender, to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), without eligibility for parole or probation. *See* Miss. Code Ann. § 99-19-81 (Rev. 2015).

¶2. Chambliss now appeals his conviction and sentence, asserting the following assignments of error: (1) the trial court erred when it denied his motion for a mistrial during voir dire, and (2) the trial court violated the United States Constitution's Confrontation Clause when it admitted testimony regarding "known" fingerprints of Chambliss. Finding no error, we affirm.

**FACTS**

¶3. On August 29, 2015, Michael Dubois discovered that two campers on his property in Fayette, Mississippi, had been burglarized. Dubois observed that the campers had been broken into and cameras on the property had been stolen. Dubois purchased new cameras and installed them along the property.

¶4. When Dubois returned to the property on September 2, 2015, he discovered that someone had again broken into the campers. Dubois testified it appeared that someone entered the campers through the storage compartments. Dubois observed that televisions and other items had been removed from the campers. Dubois watched the footage from the new cameras he installed, and he pulled photographs of an individual walking around the property. Dubois then reported the burglary to the authorities.

¶5. Jefferson County Sheriff's Deputy James Bailey investigated the case and reviewed the photographs taken from the camera on Dubois's property. Deputy Bailey testified that, while reviewing the footage, he observed a black male, whom he recognized as Chambliss, on Dubois's property. Deputy Bailey then processed the scene and collected fingerprints, which he subsequently sent to the Mississippi Crime Laboratory for analysis.

2

¶6. Mike Hood, the forensic section chief of latent prints at the Mississippi State Crime Laboratory, tested the latent prints collected from the crime scene and concluded they matched the "known prints" of Chambliss. Hood testified that he obtained Chambliss's known prints from the Mississippi criminal history system database.

¶7. On October 6, 2015, a Jefferson County grand jury indicted Chambliss on one count of burglary of a dwelling in violation of Mississippi Code Annotated section 97-17-23 (Rev. 2014). Chambliss's indictment reflected his status as a habitual offender pursuant to section 99-19-81.

¶8. At a jury trial held on February 10, 2016, the jury heard testimony from Dubois, Deputy Bailey, Hood, and Chambliss. After the State rested its case-in-chief, Chambliss moved for a directed verdict, which the trial court denied. The trial court sentenced Chambliss as a habitual offender to twenty-five years in MDOC's custody. Chambliss filed an unsuccessful motion for a new trial or, in the alternative, a judgment notwithstanding the verdict (JNOV). Aggrieved, Chambliss appeals.

## DISCUSSION

### I. Motion for Mistrial

¶9. Chambliss argues the trial court erroneously denied his motion for a mistrial during voir dire after a prospective juror made an improper statement regarding Chambliss's alleged criminal history. Chambliss submits that, because the jury that convicted him was tainted by the highly prejudicial comments of the prospective juror, the trial court erred in not granting Chambliss's motion for a mistrial.

¶10. "[T]he decision to declare a mistrial is within the sound discretion of the trial judge." *Whitaker v. State*, 114 So. 3d 725, 730 (¶14) (Miss. Ct. App. 2012) (citing *Evans v. State*, 725 So. 2d 613, 649 (¶114) (Miss. 1997)); *Tate v. State*, 20 So. 3d 623, 629 (¶13) (Miss. 2009). "To obtain reversal based on a trial court's refusal to . . . grant a mistrial, the defendant must show prejudice." *Beasley v. State*, 74 So. 3d 357, 363 (¶28) (Miss. Ct. App. 2010).

¶11. During the trial court's voir dire, the transcript reflects that the following exchange occurred between the prospective juror and the trial judge:

| | |
|---|---|
| Prospective Juror: | I didn't know who the defendant was when I came up here, but— |
| The Court: | Yes, sir. I didn't either. |
| Prospective Juror: | Well, I'm not sure if it's been a year and a half, two years ago I had to be here in court to testify against him for breaking in— |

¶12. The transcript shows that Chambliss's counsel immediately interrupted the comment and requested an opportunity to approach the bench. However, the trial court continued its voir dire as follows:

| | |
|---|---|
| The Court: | You don't need to say anything else. You don't think you could be fair? |
| Prospective Juror: | Well, I don't think it would be—I couldn't say I wouldn't lean one way or the other. |
| The Court: | Well, we need jurors that will be right on the 50[-]yard line and won't lean one way or the other. Thank you, sir. |

¶13. At the end of the trial court's voir dire, defense counsel moved for a mistrial, arguing

4

that the prospective juror "said that he had been up here a year and a half ago when he had to testify against [Chambliss]. Everybody laughed." The trial court denied the defense's motion and stated:

> [T]here was no explanation, there was no charge. I think that in a situation . . . where there was any indication, I would consider your request more harmful, but in this situation, the court finds that there was nothing said that would create or cause any prejudice to the [D]efendant. There was no mention of what kind of case it was, civil, criminal[,] or anything else, what the result was or anything else. Of course, the record will indicate what was said, but the juror merely indicated that he was up here testifying in a case that Mr. Chambliss was involved in, and that's all that was said and . . . I don't believe that there had been any prejudice that has been created that would [ad]here against the [D]efendant, so I'll overrule your motion.

¶14. Defense counsel reiterated that the prospective juror specifically mentioned that Chambliss had previously been accused of a similar property crime, stating, "Your Honor, I don't mean to argue with you, but I wanted to make it clear that what I heard was that he did specifically say for breaking in my place or whatever, but it's the same kind of case that he specifically said that." Defense counsel asked that the trial court listen to what the recorder picked up regarding the statement. The trial court refused and denied the motion for a mistrial. The record reflects that the prospective juror was not chosen to sit on Chambliss's jury.

¶15. We recognize that "the trial court is in the best position to determine if an alleged improper comment had a prejudicial effect; therefore, absent an abuse of that discretion, the trial court's ruling will stand." *Tate*, 20 So. 3d at 642 (¶48) (citing *Jones v. State*, 962 So. 2d 1263, 1275 (¶45) (Miss. 2007)). This Court has held:

> While a comment by a single prospective juror during voir dire may taint the

5

entire panel, where there is no evidence of such a taint, the court may correctly refuse to disqualify the entire panel from service if the jury affirms that it can render a verdict based solely on the evidence brought before the court.

*Whitaker*, 114 So. 3d at 730 (¶15). The Mississippi Supreme Court has explained that, when a trial judge conducts follow-up questions and the jury panel shows no indiction of bias, prejudice, or inability to be fair in discharging its duty, "it is proper for a trial judge to refuse to disqualify the entire jury panel." *Id.* at (¶14) (citing *Benson v. State*, 551 So. 2d 188, 191 (Miss. 1989)). We recognize the "presumption in Mississippi that juries have followed the instructions of the trial judge." *Id.* at 729 (¶14).

¶16. In the case before us, the trial transcript shows that, at various points after the prospective juror made his comment, all the prospective jurors, including those ultimately seated on Chambliss's jury, were asked by the trial judge whether they could be impartial and base their decisions solely on the evidence. The trial judge instructed the jury as follows: "You should base your decision . . . strictly on what you hear from the witness stand and the evidence that's introduced into a trial. Is there any one of you who could not do that? Anyone?" The trial judge further explained: "Mr. Chambliss is presumed innocent . . . . You'll be required as jurors to maintain that presumption unless and until the State proves his guilt beyond a reasonable doubt. Anyone of you who could not do that? Anyone?"

¶17. The trial judge also asked the jurors if the "nature of the charges in this case . . . makes you question in your mind whether or not you could be completely fair and impartial or anything about your past experiences with the law or as the victim of a crime which would cause you to lean one way or the other in this case? Anyone?"

6

¶18.    Finally, before permitting the parties to proceed with voir dire, the trial court instructed the jury as follows:

> Both the [S]tate of Mississippi and the [D]efendant have a right to expect that the jurors who hear this case will be completely fair and impartial to both sides, will base their verdict solely on the basis of the evidence adduced in open court and the law as instructed by the court.
>
> Ladies and gentlemen, I would ask you to examine your own hearts and minds, and if you could not be that juror, please indicate by raising your hand at this time. Anyone?

¶19.    After our review of the record, we find no abuse of discretion in the trial court's finding of no indication that the jurors in this case were "biased, prejudiced, or would be less than fair in discharging [their] duty" due to the comment made by the prospective juror. *Whitaker*, 114 So. 3d at 730 (¶14). Furthermore, the trial court instructed the jurors of their duty to be fair and impartial. Accordingly, we find no abuse of discretion by the trial judge in denying Chambliss's motion for a mistrial and allowing the jury to continue to trial. *See Tate*, 20 So. 3d at 629 (¶13). This issue lacks merit.

### II.    Testimony

¶20.    Chambliss next argues that the trial court violated the Confrontation Clause of the United States Constitution by admitting Hood's testimony about a "known" fingerprint of Chambliss that matched the fingerprints collected at the scene of the burglary. Chambliss submits that the "known" fingerprint is part of a criminal history database that exists for the purpose of identifying criminals and thus is being used in a future criminal prosecution. As a result, Chambliss argues that the statement about his "known print" constituted testimonial hearsay, which violated his constitutional right to confront the witnesses against him.

7

¶21. This Court reviews the admission or exclusion of evidence at trial for an abuse of discretion. *Jenkins v. State*, 102 So. 3d 1063, 1065 (¶7) (Miss. 2012). "Constitutional issues are reviewed de novo." *Id.*

¶22. In *Conners v. State*, 92 So. 3d 676, 682-83 (¶16) (Miss. 2012), the supreme court explained:

> The Sixth Amendment to the United States Constitution states that[,] in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. The Confrontation Clause confers a right to confront those who bear testimony against the defendant. Thus, the testimonial statements of a witness who does not testify at trial are inadmissible unless the witness is unavailable and the defendant had a prior opportunity for cross-examination.

(Internal quotation marks and citations omitted).

¶23. The record reflects Hood's testimony that he assigned Chambliss's case to himself, so he personally pulled Chambliss's prints from the Mississippi criminal history system database and compared them to the fingerprints collected from the crime scene. The trial transcript further reveals that Chambliss failed to object to Hood's testimony at trial, nor did Chambliss raise this issue in his motion for a new trial or JNOV. As a result, Chambliss's argument is procedurally barred from appellate review. *See Anthony v. State*, 23 So. 3d 611, 620 (¶41) (Miss. Ct. App. 2009) ("Since [the defendant] made no Sixth-Amendment objection to the admission of the [evidence] at trial or in her posttrial motion, her arguments on [the Confrontation Clause] issue are procedurally barred.").

¶24. However, under the plain-error doctrine, this Court may examine "obvious errors" affecting a defendant's "fundamental, substantive right" that the defendant failed to properly

8

raise at trial. *Conners*, 92 So. 3d at 682 (¶15). The supreme court "has held that a Confrontation-Clause violation is a violation of a fundamental, substantive right." *Id.* (internal quotation marks omitted). Accordingly, we must examine the record to determine whether a violation of the Confrontation Clause "occurred that resulted in a manifest miscarriage of justice." *Id.* (citing *Corbin v. State*, 74 So. 3d 333, 337 (¶11) (Miss. 2011)).

¶25. In *Jenkins*, 102 So. 3d at 1066 (¶9), the supreme court discussed the United States Supreme Court's holding that "the Sixth Amendment Confrontation Clause bars the admission of 'testimonial statements' made by a witness who does not appear at trial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him." (citing *Crawford v. Washington*, 541 U.S. 36, 53-54, 59 (2004)). The *Jenkins* court explained that, "[t]hough there is no exhaustive list defining testimonial statements, a document created solely for an evidentiary purpose ranks as testimonial." *Id.* (internal quotation marks omitted) (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 664 (2011)); *see also Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310-11 (2009). The *Jenkins* court further clarified that "[f]orensic laboratory reports created specifically to serve as evidence against the accused at trial are among the 'core class of testimonial statements' governed by the Confrontation Clause." *Jenkins*, 102 So. 3d at 1066 (¶9) (citing *Melendez-Diaz*, 557 U.S. at 309).

¶26. The State argues, however, that the United States Supreme Court's concerns regarding confrontation in *Melendez-Diaz* and *Bullcoming* are not present in the case before us.[1]

---

[1] The State cites to *United States v. Williams*, 720 F.3d 674, 698 (8th Cir. 2013), where the Eighth Circuit Court of Appeals observed:

9

During Hood's testimony, the State introduced into evidence a fingerprint card containing Chambliss's fingerprints. Hood testified that he matched fingerprints collected from the crime scene to Chambliss's known prints obtained from a law-enforcement database. The law-enforcement database contained fingerprints from Chambliss taken as part of a routine booking during the course of a previous arrest. As a result, the State submits that the fingerprints on the card were not collected in anticipation of prosecution. The State further argues that the fingerprint card alone does not serve a prosecutorial purpose absent additional analysis and testimony.

¶27. The supreme court has held that, "[c]learly, fingerprints are not testimonial evidence." *Newton v. State*, 321 So. 2d 298, 300 (Miss. 1975). *See also Maryland v. King*, 133 S. Ct. 1958, 1976 (2013) (describing fingerprinting as a natural part of the "routine administrative step incident to arrest"). The supreme court also clarified that the Confrontation Clause does not apply to nontestimonial hearsay. *Rubenstein v. State*, 941 So. 2d 735, 754 (¶47) (Miss. 2006). As a result, we find that Chambliss's right to confront witnesses against him was not

---

We do not believe that the Supreme Court's concerns regarding confrontation in *Melendez-Diaz* and *Bullcoming* are present here with respect to the fingerprint cards. Unlike the evidence in those cases, the fingerprint cards were created as part of a routine booking procedure and not in anticipation of litigation . . . . By contrast, the excluded evidence deemed to be "testimonial" in both *Bullcoming* and *Melendez-Diaz* . . . went straight to the heart of the offenses for which the petitioners in those cases were respectively charged. *See Bullcoming*, 131 S. Ct. at 2709 (petitioner charged with driving while intoxicated and the evidence at issue was a forensic report regarding the defendant's blood-alcohol level); *Melendez-Diaz*, 557 U.S. at 308, . . . (petitioner charged with distributing and trafficking cocaine and the evidence at issue was "certificates of analysis" regarding the composition of seized substance).

violated by Hood's testimony about Chambliss's "known" fingerprints.

¶28. After our review, we find no abuse of discretion by the trial court in admitting Hood's testimony, nor can we say that Hood's testimony regarding Chambliss's "known" fingerprints resulted in a "manifest miscarriage of justice." *Conners*, 92 So. 3d at 682 (¶15). This issue therefore lacks merit.

¶29. **THE JUDGMENT OF THE JEFFERSON COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE AS A HABITUAL OFFENDER OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**