# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00415-COA

**AMANDA ELLEN O'CALLAGHAN A/K/A**          **APPELLANT**
**AMANDA O'CALLAGHAN A/K/A AMY**
**O'CALLAGHAN**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 02/16/2024 |
| TRIAL JUDGE: | HON. MICHELLE DEAN EASTERLING |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/09/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. A Lowndes County Circuit Court jury found Amanda Ellen O'Callaghan guilty of two counts of possession of a controlled substance (methamphetamine). The trial court sentenced O'Callaghan as a nonviolent habitual offender and subsequent drug offender to serve two consecutive terms of six years for each count in the custody of the Mississippi Department of Corrections (MDOC). O'Callaghan appeals her convictions and sentences.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2. A Lowndes County, Mississippi grand jury indicted O'Callaghan as a nonviolent

habitual offender and subsequent drug offender on two counts of possession of methamphetamine. O'Callaghan failed to appear for trial on May 10, 2023, and as a result, O'Callaghan was tried in absentia.

¶3. At trial, Officer Glenn Jenkins with the Columbus, Mississippi Police Department testified that he noticed a vehicle driving at night without headlights on. When the driver continued to drive without turning on the vehicle's headlights, Officer Jenkins performed a traffic stop. In addition to the driver, four other people were in the vehicle, including O'Callaghan. A female police officer performed a pat-down on O'Callaghan and found the suspected drugs in crystal and pill form in O'Callaghan's underwear in small Ziploc bags. These items later turned out to be methamphetamine.

¶4. The jury found O'Callaghan guilty of both counts against her. The trial judge sentenced O'Callaghan as a non-violent habitual offender pursuant to Mississippi Code Annotated section 99-19-81 (Rev. 2020) and as a subsequent drug offender pursuant to Mississippi Code Annotated section 41-29-147 (Rev. 2023) to serve a total of twelve years in the custody of the MDOC. O'Callaghan filed a motion for a judgment notwithstanding the verdict or, alternatively, a new trial, which the trial court denied.

¶5. O'Callaghan appeals, asserting that (1) the trial court erred in trying O'Callaghan in absentia; and (2) the trial court erred in not granting a mistrial despite a jury panel member's allegedly inflammatory comment during voir dire. Additional facts pertaining to the issues O'Callaghan raises on appeal are addressed below.

**DISCUSSION**[1]

## I.  Trial In Absentia

¶6.  O'Callaghan asserts that the trial court erred in trying her in absentia.  "[A] trial court's decision to try a defendant in absentia [is reviewed] for an abuse of discretion." *Smith v. State*, 394 So. 3d 967, 975 (¶28) (Miss. Ct. App. 2024), *cert. denied*, 394 So. 3d 923 (Miss. 2024).  Although "[b]oth our federal and state constitutions guarantee an accused's right to be present at every stage of his or her trial[,] . . . this right may be waived." *Nevels v. State*, 325 So. 3d 627, 634 (¶23) (Miss. 2021) (citations omitted); *see* U.S. Const. amend. VI; Miss. Const. art. 3, § 26.  In this regard, Mississippi Rule of Criminal Procedure 10.1(b)(1)(B) expressly provides that "a defendant may waive the right to be present at any proceeding . . . by the defendant's absence from any proceeding, if the court finds that such absence was voluntary and constitutes a knowing and intelligent waiver of the right to be present." MRCrP 10.1(b)(1)(B); *see* Miss. Code Ann. § 99-17-9 (Rev. 2020) (providing that a defendant may be tried in absentia if she is "on recognizance or bail," has been notified of the charge(s) against her, and "is in any way in default for nonappearance").

¶7.  O'Callaghan's trial began on Wednesday, May 10, 2023.  O'Callaghan was not present.  The State moved to try her in absentia.  In support of its motion, the State told the trial court that it had checked the local hospital and also the local law enforcement agencies

---

[1] The applicable standard of review is addressed in our discussion of each issue on appeal.

to determine whether O'Callaghan may be in custody. O'Callaghan was not at those places.

¶8.    The trial judge noted that O'Callaghan knew about her trial date because she had been present with her counsel during the court's last term when her case was continued. O'Callaghan's attorney confirmed that O'Callaghan had been present during the previous term when her case was continued.

¶9.    Regarding the present court term, the court records showed that O'Callaghan had signed in at the court on Tuesday (the day before trial), and O'Callaghan's attorney also confirmed that O'Callaghan appeared at the court on Tuesday at about 10:30 a.m. Defense counsel told O'Callaghan to return to the courthouse the next day (Wednesday) at 9:00 a.m. for trial. O'Callaghan then told her lawyer about two proposed witnesses, so her lawyer told O'Callaghan to get the witnesses and return to the courthouse with them that afternoon to prepare them for trial the next day. O'Callaghan never returned. According to her lawyer, the phone numbers she had for O'Callaghan no longer worked—but O'Callaghan had her phone number and knew where her office was located, yet "[O'Callaghan] ha[d] not availed herself of the ability to contact me or come by my office." On Wednesday, the court bailiff called O'Callaghan's mother, who also "could not get ahold of [O'Callaghan or] . . . find her."

¶10.    O'Callaghan's counsel did not seek a continuance.

¶11.    Based on these circumstances, the trial court found that O'Callaghan knew she was to be at court that day (Wednesday) but had waived her right to be present by intentionally

4

absenting herself. The trial judge pointed out that O'Callaghan knew about this trial date from last term when she was present when her lawyer obtained a continuance, and, based on the representations of O'Callaghan's lawyer, O'Callaghan was also told "as recently as yesterday" (Tuesday) that her trial would take place the next day. The trial judge ruled that O'Callaghan would be tried in absentia, but "in the event she appear[ed] at any time," she would be allowed "to participate in the trial to the extent that she and her attorney deem that appropriate."

¶12. After voir dire was completed, the trial judge granted a recess to allow the lawyers to prepare for jury selection. During that time, O'Callaghan's lawyer discovered that O'Callaghan had sent her a text message at 9:26 that morning stating, "I couldn't get ahold of my two N-O-R E-S. Can you subpoena them? Emily Shaw is the main one but Marley Shaw is the other. Marley works at the Grill and Emily goes to school at New Hope." Per the trial judge's instructions, defense counsel texted O'Callaghan back, "Get here pronto."

¶13. The trial judge then reiterated her prior ruling "that we will proceed in the Defendant's absence." Elaborating, the trial judge held, "By virtue of a text message, it's clear that she [(O'Callaghan)] knows we have a proceeding. She knew it last term. She knew it yesterday and she knows it today. She is just intentionally not here." The trial judge upheld her ruling that O'Callaghan be tried in absentia, again noting that "she will be permitted to participate to whatever extent she wishes pursuant to her constitutional right to do so when she arrives, if she arrives."

5

¶14. On appeal, O'Callaghan asserts that because she appeared at the court on the Monday and Tuesday before trial and asked her lawyer about witnesses, this shows that her absence on Wednesday was neither willful nor voluntary. We disagree. On the contrary, we find that these circumstances provide additional evidence supporting the trial court's determination that O'Callaghan knew when her trial was, yet she "knowing[ly] and intelligent[ly] waive[d] . . . [her] right to be present." MRCrP 10.1(b)(1)(B). Further, O'Callaghan never asserted at trial or on appeal any reason for her failure to appear at trial. Under circumstances closely analogous to the facts in this case, this Court has found no abuse of discretion in the trial court's finding that the defendant waived his constitutional right to be present at trial and thus would be tried in absentia. We find these cases applicable here.

¶15. In *Smith*, for example, we found that the trial court was within its discretion to try the defendant in absentia where the defendant was present "in the courtroom when the judge informed him of his court date," defense counsel testified that she had made numerous unsuccessful attempts to communicate with defendant through his grandmother regarding the court date, and defense counsel further denied defendant's subsequent claim during the sentencing hearing that he had told his lawyer he was in the hospital during his trial. *Smith*, 394 So. 3d at 975-76 (¶¶30-35).

¶16. On appeal, the defendant asserted that trying him in absentia was improper because there was no direct evidence that his absence from trial was willful. *Id.* at 976-77 (¶35). We rejected that argument, as follows: "[O]ur review of the record confirms that substantial

6

circumstantial evidence was before the trial court demonstrating [the defendant's] intent to avoid trial," *id.* at 977 (¶35), and "[i]n such cases, the supreme court has affirmed a trial court's decision to try a defendant in absentia despite 'no direct evidence' showing that the defendant's absence was voluntary." *Id.* (quoting *Wilson v. State*, 267 So. 3d 264, 271 (¶30) (Miss. 2019)); *see also, e.g.*, *Benthall v. State*, 311 So. 3d 697, 702 (¶17) (Miss. Ct. App. 2021) (finding no abuse of discretion in the trial court's finding that the defendant waived his constitutional right to be present at trial and thus would be tried in absentia where the defendant "was aware of her trial date, made preparations for her trial," "[l]aw enforcement's attempts to locate the defendant were unsuccessful," and the defendant "failed to explain her absence to her attorney or the court"); *Carroll v. State*, 196 So. 3d 1054, 1058-59 (¶¶15, 18) (Miss. Ct. App. 2016) (finding no abuse of discretion in trying the defendant in absentia where he "knew that the case was set for trial" due to his presence in court from an earlier term; he had met with his attorney on the Monday before the Wednesday trial date and his attorney again communicated the trial date to him at that time; the defendant did not appear at trial; and his lawyer could not locate him after repeated attempts to call him).

¶17. For the reasons stated and in accordance with our precedent, we find the trial court did not abuse its discretion in finding that O'Callaghan "knowingly and intentionally and willfully relinquish[ed]" her right to be present at trial and in proceeding with trial in her absence.

## II. Motion for Mistrial

¶18. O'Callaghan asserts that the trial court erred by denying her motion for a mistrial based upon a potential juror's comments during voir dire that his brother may have "bailed her [(O'Callaghan)] out of jail many times." We review a trial court's "denial of a motion for mistrial based upon potentially prejudicial voir dire statements of potential jurors" for an abuse of discretion. *Edwards v. State*, 856 So. 2d 587, 593 (¶19) (Miss. Ct. App. 2003) (citing *Grayson v. State*, 806 So. 2d 241, 252-53 (¶29) (Miss. 2001)). "To obtain reversal based on a trial court's refusal to grant a mistrial, the defendant must show prejudice." *Chambliss v. State*, 233 So. 3d 898, 900 (¶10) (Miss. Ct. App. 2017).

¶19. Upon our review of the record and the applicable case law, we find that the trial court acted within its discretion in denying O'Callaghan's motion for a mistrial based on the potential juror's remark. O'Callaghan showed no resulting prejudice from this remark. The jury panel members were asked several times during voir dire whether they could be fair and impartial in rendering a verdict in the trial, and the only person advising the trial judge that he would have a difficult time being impartial was excused from serving in O'Callaghan's case. Further, the jurors were properly instructed that they must consider only the testimonies of the witnesses and admissible evidence in reaching their verdict. Accordingly, we are not persuaded by this assignment of error on appeal.

¶20. In relevant part, Mississippi Rule of Criminal Procedure 23.5 provides that on any party's motion or the trial court's own motion, "the court may declare a mistrial if . . . [t]he trial cannot proceed in conformity with the law." MRCrP 23.5(a). Specifically addressing

potentially prejudicial statements by a jury panel member during voir dire, the Mississippi Supreme Court has recognized that "[i]n such cases, we generally have affirmed a trial court's refusal to declare a mistrial if prospective jurors gave some indication that an improper statement would not impede their ability to be fair." *DeHenre v. State*, 43 So. 3d 407, 412 (¶9) (Miss. 2010); *see Grayson*, 806 So. 2d at 253 (¶¶31-32); *Holland v. State*, 705 So. 2d 307, 340 (¶123) (Miss. 1997); *Jones v. State*, 354 So. 3d 384, 391-92 (¶¶23-26) (Miss. Ct. App. 2023); *Chambliss*, 233 So. 3d at 902 (¶19); *Whitaker v. State*, 114 So. 3d 725, 730 (¶16) (Miss. Ct. App. 2012).

¶21. The trial judge in this case conducted a detailed voir dire, including asking whether any panel member knew any lawyer, party, or witness in the matter, and whether any panel member had any close relatives who had been charged with drug offenses similar to those in this case. Juror Number 39 (Juror 39) responded affirmatively to these questions. When the trial judge asked him to elaborate, Juror 39 described at length his nephew's trouble with drug use and his ultimate failure to overcome his addiction. Juror 39 then added,

> While I'm standing and I'm acknowledging, let me go ahead and add this to it. I know Ms. O'Callaghan. I knew her mother and father, Johnny and Marilyn. I've been to many functions with them over the years. There is a good chance my brother has bailed her out of jail many times. My brother is [a bail bondsman].

The trial judge immediately interrupted Juror 39 and then questioned him regarding his ability to be fair and impartial under these circumstances. At the end of the trial judge's voir dire, she excused Juror 39, explaining to him that she "believe[d] that there [were] certain

9

relationships and knowledge [he had regarding the defendant] that would [make it] . . . appropriate at this time for us to excuse you."

¶22.   O'Callaghan's lawyer did not object or move for a mistrial after Juror 39 commented that his brother may have "bailed her [(O'Callaghan)] out of jail many times."  Not until voir dire by the trial judge, the State, and the defense had been completed did O'Callaghan's lawyer move for a mistrial.  Defense counsel asserted that Juror 39's comments alluding to O'Callaghan's other arrests constituted inadmissible evidence under Mississippi Rule of Evidence 404[2] that "tainted the jury pool."

¶23.   The trial judge denied O'Callaghan's motion, citing Rule 23.5(a) and concluding that the trial could "proceed in conformity with the law" because the court's Jury Instruction C-1 would cure any error caused by the potential juror's comments.  MRCrP 23.5(a).[3]

---

[2] Mississippi Rule of Evidence 404(b) provides, as follows:

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

MRE 404(b)(1)-(2).

[3] The first paragraph of Rule 23.5 provides that on any party's motion, the trial court "may declare a mistrial if there occurs during the trial, either inside or outside the courtroom, misconduct by a party, a party's attorney(s), or someone acting at the behest of a party or a party's attorney(s), resulting in substantial and irreparable prejudice to the movant's case." MRCrP 23.5.  With respect to this portion of the rule, the trial judge pointed out that in this case, Juror 39's comments did not constitute "misconduct by a party, a party's attorney(s),

¶24. Jury Instruction C-1 informed the jury members that "[i]t is your duty to determine the facts and to determine them from the evidence produced in open court . . . . The evidence which you are to consider consists of the testimony of the witnesses and exhibits offered and received." In this same instruction, the jurors were also specifically instructed that "[a]ny argument, statement, or remark having no basis in the evidence should be disregarded by you."

¶25. Additionally, upon completing her voir dire, the trial judge asked the entire jury panel: "Is there any reason why any one of you cannot be fair and impartial to both sides in this case? If so, I would ask that you please stand at this time." Only one person stood up, and this person was excused from serving as a juror on O'Callaghan's case. Similarly, after completing his voir dire, the prosecutor asked the jury panel, "Is there anything . . . that we have not gone over, . . . that you want to tell us that you're thinking . . . would prevent you from being a fair and impartial juror in this particular case?" There was no indication from any potential juror that they could not be fair or impartial. Likewise, O'Callaghan's lawyer asked the jury panel, "[I]s there any reason at all that you people think you cannot sit on this jury?" No potential juror indicated there was any reason that person could not sit on the jury.

---

or someone acting at the behest of a party or a party's attorney(s)," and thus, this subparagraph did not apply.

Additionally, Rule 23.5(b) provides that on any party's motion or the trial court's own motion, "the court may declare a mistrial if . . . [i]t appears there is no reasonable probability of the jury's agreement upon a verdict." MRCrP 23.5(b). The trial judge also noted that subparagraph 23.5(b) did not apply to the circumstances in this case.

11

¶26.    Under these circumstances, we find that the trial court acted within its discretion in denying O'Callaghan's motion for a mistrial.  Several Mississippi appellate court decisions support our determination.   In *Holland*, for example, the supreme court held that the defendant failed to show the necessary prejudice to warrant a mistrial based on a jury panel member's inappropriate comment.  *Holland*, 705 So. 2d at 340 (¶123).  The panel member said that he "was in complete agreement with the first sentencing that [the defendant] got," i.e., the death penalty.  *Id.* at 339 (¶119).  As in O'Callaghan's case, defense counsel in *Holland* did not object to the statement at the time it was made.  Indeed, according to the supreme court, "[t]here was no evidence at trial that the jurors even heard [the panel member], as [defense counsel] did not ask to examine the jurors about the remark." *Id.* at 340 (¶123).

¶27.    The jury panel was not questioned specifically about the panel member's comment; but as the supreme court pointed out, "the jury panel answered throughout voir dire that they could set aside their prejudices and reach a decision on the evidence," and "[t]he jurors were instructed that only evidence from witnesses could form the basis of their verdict." *Id.* Under these circumstances, the supreme court found "that [the panel member's] statement did not taint the jury venire," and thus, the trial court did not err when it denied Holland's motion to quash the jury venire or declare a mistrial. *Id.*

¶28.    Similarly, in *Grayson*, a panel member remarked during voir dire that the defendant was "mentally off." *Grayson*, 806 So. 2d at 253 (¶30).  Like O'Callaghan's lawyer in this

case, defense counsel in *Grayson* made no objection to the statement at the time it was made, but later moved for a mistrial based on that statement, which the trial court denied. *Id.* at (¶31). The supreme court found that the trial court was within its discretion to do so, recognizing that although "the other jurors were neither questioned about the statement nor admonished to disregard it," *id.*, the trial court did later ask the prospective jurors "whether they could be fair, and [they] . . . indicated that they could be." *Id.* at (¶32). This fact, "combined with the brief nature of the comment, suggest[ed] that it was not so prejudicial as to warrant a mistrial." *Id.*

¶29. More recently, in *Jones*, a panel member stated during voir dire that the defendant "ha[d] done wrong in the past." *Jones*, 354 So. 3d at 391 (¶21). Defense counsel moved to strike that comment, which the trial court granted. *Id.* Defense counsel also moved for a mistrial, asserting that the comment about the defendant's "alleged past wrongdoing had tainted the jury pool." *Id.* The trial court denied that motion. *Id.* On appeal, we found that the trial court was within its discretion in denying that motion. *Id.* at 392 (¶26).

¶30. We recognized that "similar[] to the proceedings in *Grayson*, the [prospective] jurors here were not asked whether they could disregard the comment by [the venire member], nor were they admonished to do so." *Id.* at (¶25). The trial court, however, "did . . . immediately interrupt the response"; thus, the venire member "revealed no details about the alleged past wrongdoing." *Id.* Further, "throughout the remainder of voir dire, the prospective jurors were repeatedly questioned about their ability to remain fair and impartial," and the trial court

"properly instructed the jurors at the conclusion of [the defendant's] trial about their duty to consider only admissible testimony and evidence and to disregard any remarks the court had excluded." *Id.* On these facts and upon review of the relevant caselaw, we "conclude[d] that the isolated and vague nature of the voir dire comment, when coupled with the actions of the [trial] court, did not result in such irreparable harm or prejudice to [the defendant] so as to warrant a mistrial." *Id.* at (¶26).

¶31. We addressed similar circumstances in *Chambliss*. During the court-conducted voir dire, a panel member stated that he "had to be here in court to testify against him [(the defendant)] for breaking in—." *Chambliss*, 233 So. 3d at 901 (¶11). The trial judge interrupted the panel member, stating he did not "need to say anything else," and then the judge continued with voir dire. *Id.* at 901 (¶11). Defense counsel moved for a mistrial based on the panel member's statement, which the trial court denied. *Id.* at (¶13).

¶32. We found no abuse of discretion in the trial court's decision, observing, among other points, that after this comment had been made, "all the prospective jurors . . . were asked by the trial judge whether they could be impartial and base their decisions solely on the evidence." *Id.* at 902 (¶16). We also noted that the jurors were instructed that their decision must be based "strictly on what you hear from the witness stand and the evidence that's introduced into a trial." *Id.*

¶33. Again, in *Whitaker*, we found that the trial court was within its discretion in refusing to grant a mistrial based on prospective jurors' potentially prejudicial comments. *Whitaker*,

14

114 So. 3d at 730 (¶14). One panel member, for example, had stated that while he was a jail administrator, the defendant "had been incarcerated for an unrelated crime." *Id.* at 729 (¶11). In affirming the trial court's decision, we found that "there was no evidence in this case that the jury was tainted," and we held that "[b]ased on the presumption that juries follow the instruction of the trial judge," coupled with "the fact that the circuit judge repeatedly asked the jurors whether they could be fair and impartial in rendering a verdict at trial, it is clear that the judge did not abuse his discretion by allowing the jury to continue to trial." *Id.* at 730 (¶16).

¶34.   Despite this sound caselaw, O'Callaghan asserts that the trial court in this case erred in refusing to grant a mistrial because "[it] did not address the jury panel regarding the [specific] prejudicial remarks, instead relying on a generic jury instruction to 'cure' any problem." O'Callaghan cites *DeHenre* in support of this assertion, a case in which a venire member called the defendant an "abortionist" during voir dire. *DeHenre*, 43 So. 3d at 411 (¶8). Defense counsel "moved immediately for a mistrial, which the trial court ultimately denied." *Id.* The supreme court found that the trial court was within its discretion to deny the motion, recognizing in the course of its opinion that "[i]mmediately after this comment was made, the trial court removed that juror and twice asked the members of the jury pool whether they could put the comment aside." *Id.* at 412 (¶11). Based on this point, O'Callaghan asserts that the trial court in this case erred in refusing to grant a mistrial because the court did not immediately and specifically question the prospective jurors

15

whether they could disregard Juror 39's comment.

¶35. We are not persuaded by O'Callaghan's argument because its premise is directly contrary to the cases discussed above in which the absence of specific questioning concerning the prejudicial comment did not render the trial court's denial of a mistrial an abuse of discretion. Nor do we find any indication in *DeHenre* that a trial court is *required* to immediately question the venire regarding their ability to be fair and impartial following a potentially prejudicial remark by a prospective juror. Such a requirement would be particularly untenable here, where O'Callaghan's trial counsel made no objection to Juror 39's comment during voir dire, nor did O'Callaghan's trial counsel question the venire about their ability to be fair and impartial during her own voir dire.

¶36. As addressed above, the Mississippi appellate courts have affirmed a trial court's denying a mistrial where the jury panel members were not questioned about the alleged prejudicial statement; but "the jury panel answered throughout voir dire that they could set aside their prejudices and reach a decision on the evidence," and "[t]he jurors were instructed that only evidence from witnesses could form the basis of their verdict." *Holland*, 705 So. 2d at 340 (¶123); *accord Grayson*, 806 So. 2d at 253 (¶32); *Jones*, 354 So. 3d at 392 (¶26); *Chambliss*, 233 So. 3d at 902 (¶16); *Whitaker*, 114 So. 3d at 730 (¶16). These circumstances—and more—are present in this case.

¶37. As in these cases, the panel members here were questioned about their ability to remain fair and impartial several times during the course of voir dire, and the panel member

16

who thought he could not be impartial was excused from serving in O'Callaghan's case. The trial court also properly instructed the jurors concerning their duty to consider only the witnesses' testimonies and exhibits admitted into evidence and to disregard "[a]ny argument, statement, or remark having no basis in the evidence." On this point, we bear in mind that "[t]he jury is presumed to have followed the directions of the trial judge." *Edwards*, 856 So. 2d at 593 (¶20).

¶38. We also take into account that "the trial court is in the best position to determine if an alleged improper comment had a prejudicial effect; therefore, absent an abuse of that discretion, the trial court's ruling will stand." *Chambliss*, 233 So. 3d at 901 (¶15). Given Juror 39's rambling responses to the trial judge's questioning, and the relatively "brief nature of the comment," *see Grayson*, 806 So. 2d at 253 (¶32), there is no evidence that the other panel members even heard the comment, "as [O'Callaghan's lawyer] did not ask to examine the jurors about the remark." *Holland*, 705 So. 2d at 340 (¶123). There is simply no evidence in this case that the jury was tainted. For all these reasons, we find that the trial judge was within her discretion in refusing to grant a mistrial in this case.

¶39. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., LAWRENCE, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS AND McCARTY, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**